SCHUYLER D. CHADSEY, Appellant, v. WILLIAM H. GUION, Respondent.

Where there is an irreconcilable conflict between two provisions of a contract, one of which is part of a printed form used in drawing the contract and the other is in writing, the latter must govern and control the interpretation of the instrument.

Defendant and others issued an open policy of marine insurance, a printed form being used; this provided that its general language should be controlled by indorsements of special risks, as made from time to time. "Touching the adventures and perils" insured against, the policy declared that "*in this voyage* they are of the seas * * * and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandise, *or any part thereof*." A subsequent provision, however, declared that "vegetables and roots * * * and all other articles that are perishable in their own nature * * * are warranted by the assured free from average unless general." The policy also provided that "the adventure shall continue and endure until the said goods and merchandise shall be safely landed at aforesaid." Plaintiff's assignor was insured by indorsement on said policy, upon a quantity of potatoes, "said to contain 1650 barrels," shipped in bulk on a canal boat named, "from New York to Yonkers, F. P. A." which initials, it was conceded, meant that the risk was free from particular average; *i. e.* that the assured should only be accountable for a total loss. The boat arrived at its port of destination with its cargo entire and in good order, but after about 109 barrels of the potatoes had been taken out and delivered to the consignees in good order, the boat sank with the remainder of the cargo, and most of it was lost. In an action upon the policy *held*, that by the contract the insurers were exempted from the payment of any loss, occurring only to a portion of the property, their liability being confined to the absolute or constructive loss of the entire cargo; and that, therefore, when by the delivery in good order of a material part a total loss during the progress of the insured voyage became impossible, such liability terminated.

(Argued October 28, 1884; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 5, 1882, which reversed a judgment in favor of plaintiff, entered upon a verdict, and directed judgment in favor of defendant. (Reported below, 16 J. & S. 267.)

This action was upon an open policy of marine insurance, the material portions of which as well as the facts are stated in the opinion.

*Everett P. Wheeler* for appellant. It is the duty of the courts to give to all doubtful words or expressions in contracts such an interpretation as will make them produce some effect. (*Ward* v. *Whitney*, 8 N. Y. 442, 446 ; 2 Kent's Comm. 555 ; *Hayward* v. *Liverpool Ins. Co.*, 2 Abb. Ct. App. Dec. 349 ; affirming 7 Bosw. 385.) The language of the policies of insurance is to be taken most strongly against the company. (*Rolker* v. *Great Western Ins. Co.*, 4 Abb. Ct. App. Dec. 76 ; *Winspear* v. *Accident Ins. Co.*, 42 Law Times Rep. [N. Y.] 900–4 ; *Smith* v. *Same*, Law Rep., 5 Exch. 303 ; *Hearn* v. *New England Ins. Co.*, 3 Cliff. 318.) In a case of marine insurance goods begin to be covered by the policy as fast as they are put on board, or put on lighters for the purpose of being put on board. (*Hurry* v. *Royal Ex. Ins. Co.*, 2 Bos. & Pull. 430, 435.) The goods, as fast as landed, cease to be covered by the policy. (*Mobile Ins. Co.* v. *McMillan*, 27 Ala. [N. S.] 77, 98 ; *Mansur* v. *Ins. Co.*, 12 Gray, 520–7 ; *Oscar* v. *La. Ins. Co.*, 17 Martin La. R. [5 ib., N. S.] 386 ; *Harrison* v. *Ellis*, 7 Ell. & Black. 465 ; Crump's Mar. Ins., § 196 ; Arnold on Mar. Ins. [4th ed.] 369, 391.) The storm and floating ice constituted a peril of the seas within the language of the policy. (*Wallerstein* v. *Columbian Ins. Co.*, 44 N. Y. 204, 217 ; *Young* v. *Pacific Mut. Ins. Co.*, 2 Jones & Sp. 321 ; *Robertson* v. *Atlantic Mut. Ins. Co.*, 68 N. Y. 192 ; affirmed, S. C., 5 J. & S. 442.) The delay in discharging is no defense. (1 Greenl. Ev., §§ 292, 288 ; *White's Bank* v. *Myles*, 73 N. Y. 335.) The abandonment was seasonable. (3 Kent's Comm. 318 ; *Wallerstein* v. *Columbian Ins. Co.*, 44 N. Y. 204.)

*Treadwell Cleaveland* for respondent. Where in a contract there is a conflict between the printed words and the written words, the latter govern. (Phillips on Ins., § 125 ; 1 Pars. on Mar. Ins. 65 ; *Burt* v. *Brewers & Maltsters' Ins. Co.*, 9

Hun, 383; *Harper* v. *N. Y. Ins. Co.*, 22 N. Y. 444.) Under such a form of policy as in the case at bar, the insured cannot recover for a total loss of a part, if any part of the subject reaches the port of destination, in specie and of value. (*De Peyster* v. *Sun Mut. Ins. Co.*, 19 N. Y. 277; *Magrath* v. *Church*, 1 Caines, 196; *Leroy* v. *Governeur*, 1 Johns. Cas. 226; *Wadsworth* v. *Pacific Ins. Co.*, 4 Wend. 33; *Ralli* v. *Janson*, 6 Ell. & Bl. 422; 2 Arnold on Insurance [Maclachan], 905; *Nelson* v. *Columbian Ins. Co.*, 3 Caines, 108; *Salters* v. *Ocean Ins. Co.*, 14 Johns. 138; *Moreau* v. *The U. S. Ins. Co.*, 1 Wheat. 219; *S. C.*, 3 Wash. C. Ct. 256; *Poole* v. *Protection Ins. Co.*, 14 Conn. 46; *Humphreys* v. *Union Ins. Co.*, 3 Mason, 429; *Buchanan* v. *Ocean Ins. Co.*, 6 Cow. 330; *Burt* v. *Brewers & Maltsters' Ins. Co.*, 9 Hun, 383; *Young* v. *Pacific Ins. Co.*, 2 Jones & Sp. 321; Pars. on Ins. 292.) There was no legal notice of abandonment given in this case, or if given, it was waived by the acts of the assured. (*Wallerstein* v. *The Columbian Ins. Co.*, 44 N. Y. 222; *Andrews* v. *Royal Ex. Ass. Co.*, 7 East, 38; 2 Pars. on Mar. Ins. 192–3; *Walden* v. *Phœnix Ins. Co.*, 5 Johns. 310, 325.)

RUGER, Ch. J. The plaintiff's assignor was insured on a quantity of potatoes for transportation from New York to Yonkers, by an open policy of insurance issued by the defendant and ninety-nine associates known as "United States Lloyds" to Gebhard and Brewer on account of whom it may concern.

It is of the nature of such a policy that it does not become operative except by virtue of special indorsements, made by the underwriters, at the request of the insured, as they are needed from time to time, indicating the property insured, the rate of premiums charged, and other special conditions agreed upon by the parties.

The original policy consisted of a printed form, couched in general language, and intended to be adaptable to and embrace almost every variety of marine insurance which the underwriters might be invited to make. It was specially provided, however, by the terms of the policy that its general language

should be controlled by the indorsements of special risks as they should be made from time to time. Its language is, "the premiums on risks to be fixed at the time of indorsement, and such clauses to apply as the assurers may insert as the risks are successively reported." The policy also contained a clause "touching the adventures and perils which the said assurers are contented to bear and take upon themselves *in this voyage*, they are of the seas," etc., "and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandises, *or any part thereof*." This clause was, however, qualified by a subsequent provision embraced in a memorandum which declared "vegetables and roots" "and all other articles that are perishable in their own nature, or which have been damaged before shipment from any cause, are warranted by the assured free from average, unless general."

It appears from the written application for insurance, and the indorsement made by the underwriters, December 9, 1866, upon the policy in question, that an insurance to the amount of $4,000 was thereby effected upon a quantity of potatoes on the canal boat " W. H. Neal," from New York to Yonkers, F. P. A., at the premium of one-quarter of one per cent.

The case was tried and argued upon the assumption by both parties that the initials F. P. A. meant that the risk was free from particular average, or in other words, that the assurers should be accountable only for a total loss of the property insured.

A further clause in the original policy reads as follows: " Beginning the adventure upon the said goods and merchandises from and immediately following the loading thereof on board of the said vessel at ——— as aforesaid, and so shall continue and endure until the said goods and merchandises shall be safely landed at ——— as aforesaid."

It appears from the reading of these various provisions that a repugnance exists between the printed and written portions of the contract in respect to the clauses which provide for an insurance upon the cargo "and every part thereof,"

and its continuance until the "goods and merchandises shall be safely landed," and the written stipulation contained in the special indorsement providing that the risk should be free from particular average. If the provision continuing the insurance over the whole goods until they are safely landed be enforced, it must subject the assurers to any loss occurring to such part of the goods as might be lost or injured by the perils insured against before landing.

It needs no argument to show that an insurance upon certain particular articles and every part thereof, is totally irreconcilable with a provision exempting an insurer from liability for a loss to a part of the property insured. The clause in the original policy covering any part of the subject insured, and continuing the risk until the goods were safely landed, would, unexplained and unmodified, require the payment of a loss occurring through the destruction, by any of the perils insured against, of any part of the insured property, and would continue the insurance over the entire cargo until it was discharged, even though a part had been safely landed and secured from loss or destruction. The special indorsement, on the other hand, excepts the assured from the payment of a partial loss, and provides indemnity only for a total loss of the whole cargo insured. The provision in respect to the insurance upon the goods, etc., and "any part thereof," is undoubtedly qualified by the memorandum excepting "roots and vegetables" from any average unless general, and independent of other considerations, would relieve the assurers from any loss upon the property insured unless it was total as to the whole subject. ( *Wadsworth* v. *Pacific Insurance Co.*, 4 Wend. 33 ; *Ralli* v. *Janson*, 6 Ell. & Bl. 422 ; *Morean* v. *U. S. Ins. Co.*, 1 Wheat. 219 ; *De Peyster* v. *Sun Mutual Ins. Co.*, 19 N. Y. 277.)

The true office of the provision in the indorsement warranting the assured against liability for a partial loss was undoubtedly to emphasize the exception contained in the memorandum, and to limit, by express language, the extent of the assurers' liability. The premium therein charged was adapted to the limited liability thereby assumed. It is, therefore, in accord-

ance with the express stipulation of this contract, as well as the settled rules of construction, that the conditions inserted in the written indorsement must govern and control the interpretation of the instrument in the case of an irreconcilable conflict among its various provisions. Such a conflict is seen in the provisions referred to.

It was held in the case of *Wadsworth* v. *Pacific Insurance Company* (*supra*) that an underwriter is not accountable for a partial loss on memorandum articles, except for general average, unless there is a total loss of the particular species, whether the particular article be shipped in bulk or in separate boxes or packages. This also seems now to be the settled law in England as well as this country. (*Ralli* v. *Janson, supra ; Wallerstein* v. *Col. Ins. Co.*, 44 N. Y. 204; *Morean* v. *U. S. Ins. Co., supra.*)

This contract speaks of the subject as it existed at the time the risk commenced, and the evidence shows it to have consisted of a quantity of potatoes in bulk, said to contain sixteen hundred and fifty barrels on the canal boat W. H. Neal.

It is against a partial loss of any part of this subject that the contract seeks to protect the assurers, and there is no rule of construction which, after the risk attached, will permit the diminution by a delivery in good order at the port of destination of a part of the subject insured, and still keep alive the insurance, without defeating the object sought to be effected by the special provisions referred to. (*Morean* v. *U. S. Ins. Co., supra.*)

The subject of the insurance here is entire, and is determined, when the risk attaches. Any subsequent dealing with the property by the assured which results in the preservation of a substantial part of it, so that it may be delivered in safety and in good order at the port of destination, discharges the obligation of the assurers. (*Guerlain* v. *Col. Ins. Co.*, 7 Johns. 527.) The various fallacies by which such a contract as the present has been construed as intended to cover a total loss of a part of the insured subject, when it was shipped in separate boxes or packages, and valued separately, have now been rejected by the

courts of the principal maritime countries. (*Ralli* v. *Janson, supra,* and continental authorities cited, *Wallerstein* v. *Col. Ins. Co., supra;* Phil. on Ins., § 1773; 2 Pars. on Ins. 292.)

Conceiving, therefore, that an irreconcilable repugnance exists between the provisions referred to, the contract must be construed so as to give effect to the stipulations contained in the special indorsement, even though we are thereby required to nullify other provisions contained in the printed parts of the same contract. It scarcely needs the citation of authority to support the long-established rule that the printed portions of a contract, when repugnant, must be subordinated to those which are written, and that the latter are presumed, from the circumstance of their special and deliberate insertion by the parties, to embrace the real intent and meaning. (*Leeds* v. *Merch. Ins. Co.,* 8 N. Y. 351; *Harper* v. *Alb. Mut. Ins. Co.,* 17 id. 194; *Harper* v. *N. Y. City Ins. Co.,* 22 id. 441.)

The rule requiring courts to construe contracts so as to give effect to every expression contained therein, when it can reasonably be done, is undoubtedly a salutary one, and should not be departed from; but it is not applicable to a case where the repugnance between its various provisions is irreconcilable, and the effect of the construction would be to defeat the main intent of the contracting parties in making it. We think such a repugnancy exists in this case.

Considered in the light of the principles referred to, it is apparent that it was the intention of the parties to this contract to exempt the assured from the payment of any loss, whether total to that part or otherwise, occurring to a portion only of the property insured, and to confine their liability to the absolute or constructive loss of the entire cargo. Cases and authorities are cited to show that, under various policies insuring cargoes of vessels until they are safely landed, the insurance is construed to extend to a period of time subsequent to the landing of the goods at the port of destination; but these citations have no application to the case of an insurance free from particular average.

As we have seen, such insurance terminates whenever, by

the preservation of a material part a total loss of the whole of the subject insured becomes, by the voluntary act of the insured or from other causes, impossible of accomplishment during the progress of the insured voyage.

In this case the vessel arrived at its port of destination with its cargo entire, and in good order, on or about the 18th of December. From that time to the 1st day of January thereafter, from time to time, as the weather permitted, potatoes amounting in quantity to 109 barrels were delivered to the consignee in good order, and were sold and distributed by him directly from the boat to his various customers in the village of Yonkers. The value of this portion of the cargo has been accounted for by the consignee to the assured, and they have had its proceeds.

On the 1st day of January a gale sprang up which had the effect of driving large quantities of ice against the boat as she lay at the dock, and, by the breaking of her sides, caused her to sink with the remainder of the cargo on board. Some of this cargo was afterward got out in a greater or less damaged condition, and a question is raised as to whether the loss of the portion remaining on the boat was partial or total.

In the view we take of the case, this question is not important as we consider the preservation of a material part of the cargo in specie and in good order an answer to the claim for a total loss.

The claim of an alleged abandonment made on January 4th as for a total loss cannot be maintained for the reason that the loss was not total, and the contract was spent at the time the abandonment was attempted.

For these reasons the judgment should be affirmed.

All concur.

Judgment affirmed.