HERMAN KRATZENSTEIN, Appellant, *v.* THE WESTERN ASSUR-
ANCE COMPANY OF THE CITY OF TORONTO, Respondent.

Where an insurance contract is so drawn as to be manifestly ambiguous,
so that reasonable and intelligent men would honestly differ as to its
meaning, the doubt will be resolved against the insurer.

Defendant issued a policy to L. & Co., by the terms of which it made
insurance and caused the several persons "*indorsed thereon* to be insured
on all goods, wares and merchandise laden on board the good vessel or
vessels, boat or boats, railroad or *carriage*, * * * at and from ports-
and places * * * on a regular and lawful route, for the several
amounts and at the rates *as hereon indorsed*, subject to the conditions of
the policy, beginning the adventure" at the port or place named in the
indorsement. No shipment to be considered as insured until approved and
indorsed on the policy by the company. There was an indorsement upon
the policy which, after stating the amount of insurance and the property
insured, to wit, clothing or merchandise, contained these words, "against
* * * the risks * * * of fire and inland navigation and trans-
portation while on vessels, steamboats or railroads, or in hotels, stores or
depots, * * * and while in custody of the assured or traveling sales-
man." The goods insured, while in the charge of a traveling salesman of
the assured, who was traveling with them in a carriage, and who attempted
to cross a bayou by fording, that being the usual way of crossing, were
damaged by water. In an action upon the policy, *held*, that the words " as
hereon indorsed " related simply to the amount and rate of insurance, and
did not require the permitted means of transportation to be indorsed upon
the policy; that the provision declaring that no shipment should be con-
sidered as insured until approved and indorsed on the policy referred
only to the property insured; that the omission of the word " carriage "
from the written indorsement did not limit the policy in this respect; and
that the loss was covered by the policy.

*Kratzenstein* v. *Western Assurance Company* (21 J. & S. 505) reversed.

(Argued June 4, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
July 13, 1886, directing judgment in favor of the defendant,
upon the submission of a controversy without action, under
section 1279 of the Code of Civil Procedure.

The question was whether or not the plaintiff was entitled
to recover $503.52, with interest, for the loss of goods claimed
by him to have been insured by the defendant.

The facts, so far as material, are stated in the opinion.

*George H. Yeaman* and *Isaac N. Falk* for appellant. Every policy must, if possible, be taken as a whole. (*B. E. S. R. R. Co.* v. *B. S. R. R. Co.*, 19 N. Y. S. R. 574, 577; 111 N. Y. 132; *Ward* v. *Whitney*, 8 id. 446; *Miller* v. *H. & S. J. R. R. Co.*, 90 id. 430; *Barhydt* v. *Ellis*, 45 id. 107; *Babcock* v. *L. S. & M. S. R. Co.*, 49 id. 496, 497; *In re Curser*, 89 id. 401.) The evident intent of the written indorsement should receive recognition. (Stephens' Crim. Dig. 196; *B. E. S. R. R. Co.* v. *B. S. R. R. Co.*, 19 N. Y. S. R. 574, 577.)

*Joseph H. Mosher* for respondent. The policy did not cover goods in a wagon or carriage. (2 Phill. on Ins. § 1178, note 1; *Chadsey* v. *Guion*, 97 N. Y. 333, 335.) The clause in the indorsement "and while in custody of the assured or traveling salesman," is not a separate and independent ground of liability. (2 Parsons on Contracts, 495, 497, 500, 507, 513, note 1; *Adams* v. *Warner*, 23 Vt. 411, 412; *Maynard* v. *Wright*, 26 Beav. 285.)

VANN, J. The claim of the plaintiff is based upon a policy of insurance issued by the defendant to the firm of Moses Lobe & Co., dated November 18, 1885, whereby, as stated in the printed portion thereof, it made insurance and caused "the several persons *indorsed thereon* to be insured upon all kinds of lawful goods, wares and merchandise laden on board the good vessel or vessels, boat or boats, railroad or *carriage*, lost or not lost, at and from ports and places to ports and places, on a regular and lawful route, for the several amounts and at the rates *as hereon indorsed*, subject to the conditions of this policy, * * * according to their true intent and meaning; beginning the adventure upon the said property from and immediately following the loading thereof at the port or place named in this indorsement, and so shall continue and endure until the same shall arrive and be safely landed at the port of destination, and not to exceed forty-eight hours from the time of arrival." The remainder of the policy, so far as it is deemed material, is as follows: "Touching the

adventures and perils which the said Western Assurance Company is contented to bear and take upon itself, they are of the lakes, rivers, canals, railroads, fires, jettisons and all other perils or misfortunes that have or shall come to the hurt, detriment or damage of the said property, or any part thereof," except theft, barratry or robbery and certain other exceptions not material to notice. "It is also agreed and understood that in case of loss or damage under this policy, the assured, in accepting payment therefor, thereby and by that act assigns and transfers to this company all his or their right to claim for loss or damage as against the carrier, or other person or persons, to enure to their benefit, however, to the extent only of the amount of loss or damage, and attendant expenses of recovery, paid or incurred by the said Western Assurance Company." "No shipment to be considered as insured until approved and indorsed hereon by this company."

There was a written indorsement upon the policy substantially in these words: "To the amount of one thousand dollars. to cover on clothing and merchandise, * * * including trunks valued at invoice cost * * * against any and all the risks and perils of fire and inland navigation and transportation while on vessels, steamboats or railroads, or in hotels, stores or depots in the United States * * * and while in custody of the assured, or traveling salesman." A paper called a "rider," signed by the agent who issued the policy, was attached thereto, containing many provisions not deemed important, but also the following: "Loss, if any, payable to assured or order." "$1,000 at two and one half per cent for twelve months from noon of the 18th day of November, 1885, to noon of the 18th day of November, 1886. To attach to policy 242 of Western Assurance Company." There was also indorsed upon the policy, apparently upon the outside after it was folded: "No. 242, Lake Cargo Policy, Western Assurance Co., of the City of Toronto, Assured, Moses Lobe & Co., Amount insured $1,000, expires November 18, 1886, W. A. Carpenter, Agent, No. 4 Hanover Street, New York."

The case shows that the assured owned the property in question when the policy was issued and until the 1st of January, 1886, when it was damaged by water in the following manner : One of the traveling salesmen of the assured attempted to cross the Loutre Bayou, in the state of Louisiana, by fording the same, which was the usual way of crossing. He had a two-horse carriage loaded with trunks, containing certain goods belonging to the assured of the kind described in the policy. It did not appear dangerous to ford the bayou, but the horses, without any negligence on the part of the assured or their agent, became entangled in a log that had drifted into the stream, and thus caused two of the trunks to be thrown into the water, whereby the goods insured were damaged to the amount of $503.52. The log was in the road at the usual crossing of the ford, but it could not be seen at the time and had not been there before.

It was further admitted that the assured had complied with all the conditions of the policy and that the plaintiff had acquired all the rights of Moses Lobe & Co. to the claim in question.

The learned General Term ordered judgment for the defendant upon the ground that the indorsement must be treated as expressing the latest intention and agreement of the insurer and insured, and that as the word " carriage " was omitted therefrom, goods while laden in a carriage were not covered by the policy.

Where a contract contains two repugnant provisions, the one printed and the other written, it is well settled that the latter must control the interpretation of the instrument, as it is presumed to express the latest intention of the parties. (*Chadsey* v. *Guion*, 97 N. Y. 333 ; *Harper* v. *Albany Mut. Ins. Co.*, 17 id. 194.) Unless the conflict is irreconcilable, however, this rule does not apply, but the principle prevails that contracts should be so construed as to give effect to every word and expression contained therein. (*Miller* v. *Hannibal & St. Joseph R. R. Co.*, 90 N. Y. 430 ; *Barhydt*

v. *Ellis*, 45 id. 107; *Ward* v. *Whitney*, 8 id. 446.) Still, if
the printed part of the contract is in general terms, and it·
specifically provides that certain portions thereof are not to
be operative unless contained in the written indorsement, the
latter must control. (*Chadsey* v. *Guion, supra.*)

The discussion in this case should be confined to the method
of transporting the insured property allowed by the policy,
as this only is material under the circumstances attending·
the loss. In considering the questions presented, regard
should be had to the fact that the insurer, in writing the
policy, used a form designed to cover risks upon lake cargoes,
and adapted it to a risk upon the wares and samples of a.
traveling salesman. The obvious nature of the risk suggests
the kind of protection needed, and may aid in discovering·
the intention of the parties.

The main question arising for decision is whether, by the·
terms of the contract, the permitted means of transportation
are to be indorsed upon the policy. No indorsement is neces-
sary, even upon an open or running policy, unless it is·
required, and then only to the extent required, by the specific
agreement of the parties. (1 Parsons on Marine Ins. 328.)
It is claimed, on the one hand, that the words "as hereon,
indorsed," as they appear in the first sentence already quoted
from the policy, refer simply to the amount and rate of insur-
ance, while it is contended on the other that they refer to and
qualify every part of the sentence which precedes them. If·
the latter construction is correct, it is difficult to see why the
word " indorsed " should be used twice in the same sentence,
as it involves a useless repetition and is an awkward and
unnatural expression. The natural, as well as the grammatical
construction, as it appears to us, is that the words in question
refer to the amount and rate of insurance, and require that
these should be indorsed, as by the first part of the sentence
the persons insured were required to be indorsed upon the
policy. The intermediate portions of the sentence which
relate to the point in dispute are not so connected with either
part containing the word " indorsed " as to be controlled by

it. According to the body of the policy, therefore, the insured had the right to transport their goods on vessels, boats, railroad or carriage. But assume that, without violence to reason or grammar, the construction favorable to the respondent is possible, and hence that it is doubtful what the real meaning is, how should that doubt be determined? Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty thereby created. (*Allen* v. *St. Louis Ins. Co.*, 85 N. Y. 473; *Herrman* v. *Merchants' Ins. Co.*, 81 id. 184; *Dilleber* v. *Home Life Ins. Co.*, 69 id. 256, 263; *Hoffman* v. *Ætna Fire Ins. Co.*, 32 id. 405.) If the defendant intended that the risk should not cover goods in transit, except by such conveyances as should be mentioned in the indorsement, it should have said so in clear and unmistakable terms so that no one could be misled.

The provision that no shipment is to be considered as insured until approved and indorsed on the policy has reference only to the property insured. As that is not named in the body of the agreement it becomes a necessary part of the indorsement, for otherwise there would be no subject of insurance, and nothing for the contract to operate upon. As we construe the body of the policy, the indorsement is required to cover but five subjects, the amount of insurance, the rate charged, the goods shipped, the port or place of loading or departure, and the names of the assured. With these points, covered by the indorsement, the contract became complete, and each provision thereof effective. The indorsement, of course, while not required to extend farther, could be made to enlarge or limit any provision of the policy proper. It was clearly within the power of the parties to make the indorsement exclusive by the use of terms showing their intention to do so. Although, as already appears, the indorsement need not embrace the permitted means of transportation, the ques-

tion still remains whether the indorsement, as made, contains anything upon the subject that is in necessary conflict with the body of the policy. The important fact underlying this point is that the contract was enlarged by the indorsement into a traveling saleman's policy. Thus the risk was extended to the goods of the assured whiie in hotels, stores or depots, although, by the body of the instrument this was not permitted. The object of the policy was to protect property in the custody of a traveling salesman while he was off on his trip, whether he was traveling from place to place, staying over night at a hotel, exhibiting the goods in a store, or had them at a depot waiting for a train. Under these circumstances is it probable that the parties intended to exclude one of the commonest modes of conveyance used by commercial travelers? Moreover, as common carriers and innkeepers are insurers, unless protected by special contract or by statute, property in charge of a traveling salesman would stand in greater need of protection while he was traveling with them in a carriage than when he had them on a vessel or train, or at his hotel. Why should a policy designed to protect a special class omit the risk as to which that class had the greatest need of protection? The written indorsement does not expressly restrict the insurance to the points covered by it. It contains no provision that those shall be the only risks, or that the means of transportation mentioned shall be exclusive. The omission of the word "carriage" from the written indorsement does not contradict anything in the printed body of the policy. No words of limitation or of exclusion are used. Nothing in the indorsement, either expressly or even by necessary implication, precludes the use of a carriage to transport the goods. Indeed, it is doubtful whether a condition of that character can be created by implication. (*Rann* v. *Home Ins. Co.*, 59 N. Y. 387.) There is, in fine, no conflict, either literal or in true intent and meaning, between the printed and written parts of the policy with reference to the vehicle to be used in carrying the goods from place to place. What, then, becomes of the word "carriage" as used in the

body of the policy? By force of what provision of the contract can it be ignored or excluded? How can effect be given to every word used by the parties, as the authorities already cited require where there is no conflict, unless it is held that the property was covered while in the carriage of the traveling salesman?

We think that the loss in question came within the protection of the policy, and that the judgment appealed from should be reversed and judgment ordered for the plaintiff in accordance with the terms of the submission.

All concur.

Judgment reversed.