ST. PAUL FIRE & MARINE INS. CO. v. KIDD et al.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

INSURANCE—CONSTRUCTION OF POLICY—SUBROGATION.

A policy of insurance on certain whiskies to be shipped was made "as per form attached," and by the attached form the insurer's liability was limited to the excess in value over $20 per barrel, carriers to have the right to limit their liability for loss to $20 per barrel, and the insured to have the right, on collecting that sum from the carrier, to give a release from all liability. The body of the policy, however, contained a provision that any claim against the carrier for loss should be assigned to the insurer. *Held*, that the provisions of the attached form must prevail over the inconsistent provisions contained in the body of the policy, and that it was no defense to an action on the policy that the shipper, by accepting a bill of lading providing that the carrier should have the benefit of all insurance on the goods, had destroyed the insurer's right of subrogation.

At Law. Action by George W. Kidd and others against the St. Paul Fire & Marine Insurance Company. From a judgment for plaintiffs, defendant brings error. Affirmed.

Joseph A. Shoudy, for plaintiff in error.

John G. Milburn, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error was the defendant in the court below. It was sued by the plaintiffs upon its policy of fire insurance issued to them. The action was tried before a jury, and the judge, upon a statement of facts agreed to by the parties, and which presented merely questions of law, directed a verdict for the plaintiffs. The defendant excepted, and has assigned error of that ruling.

An open policy was issued by the defendant, May 22, 1890, insuring the plaintiffs in the sum of $3,000, on account of whom it may concern, loss, if any, payable to them, for the term of one year, on spirits, whiskies, etc., and packages containing the same, while in transportation in the state of Illinois and elsewhere, on railroads or on ferryboats, to destination in another state. It contains the following clauses, among others:

"This policy to be liable only for excess of value above $20 per barrel, which will be deducted from all losses before presentation of claim." "It is understood that the transportation companies may limit their liability to the insured to $20 per barrel on goods shipped under this policy, and the said insured may, in the case of loss, collect said sum from said companies, and release the same from all liability, without affecting the liability of the insurer."

These clauses were inserted in an ordinary cargo policy adapted to marine insurance, by attaching a form to the policy. The policy reads that the property is insured "as per form attached." The body of the policy contains the following condition:

"Should any loss or damage under this policy be occasioned by any other vessel, person, or persons, in such a manner that such other vessel, or the owners thereof, or such person or persons, should be liable therefor, then all claims for such losses and for damage shall be assigned over to this company, and shall inure to its benefit, in proportion to the amount of such loss sus-

tained by them; that is to say, the amount of such loss shall be satisfied and paid out of what shall be recovered by such claimants in the same proportion (according to such amount) as the losses sustained by other sufferers shall be paid out of said recovery."

October 13, 1890, the plaintiffs shipped at Peoria, Ill., for transportation to them at New York, over the railroad of the New York, Chicago & St. Louis Railroad Company and the railroad of the Delaware, Lackawanna & Western Railroad Company, certain spirits, of which 63 barrels, of the value of $6,349.03, were destroyed by fire October 17, 1890, and became a total loss, while in the course of transportation on the railway of the New York, Chicago & St. Louis Railroad Company. The plaintiffs shipped the spirits pursuant to a bill of lading received by them from the railroad companies, which, among other things, contained the following condition:

"In case of loss or damage of any goods named in this bill of lading, for which these companies may be liable, it is agreed and understood that they may have the benefit of any insurance effected by or on account of the owner of said goods."

The fire occurred solely through the negligence of the New York, Chicago & St. Louis Railroad Company. Thereafter due notice of the loss was given to the defendant, and proofs of loss were made and presented to it, conformably to the provisions of the policy. The time for the payment of the loss had expired, and the defendant had not paid the same at the time of the commencement of the suit.

Upon these facts the defense interposed by the defendant was that, by agreeing with the railroad company that it should have the benefit of the insurance, the plaintiffs destroyed the right of subrogation reserved by the policy, and deprived defendant of any remedy against the transportation company for the loss, and consequently could not recover on the policy. In directing the jury to find a verdict for the plaintiffs the trial judge overruled this defense. We think there was no merit in the defense, because the special conditions of the form written into the policy are inconsistent with the retention of the insurer's ordinary right of subrogation, and are intended to give to the plaintiffs the sole and exclusive benefit, in the event of a loss, of any remedy against any transportation company responsible therefor. If there is any collision between these conditions and the subrogation clause in the body of the policy, the latter must give way. The instrument, having been prepared by the defendant, is to be construed most strongly against the defendant if its provisions conflict. National Bank v. Insurance Co., 95 U. S. 673. The form is expressly referred to in the policy as embodying the terms of the insurance, and is obviously designed to cover a special class of risks to which many conditions in the policy do not attach. The terms supersede any inconsistent terms in the body of the policy. Chadsey v. Guion, 97 N. Y. 333; Halpin v. Ins. Co., 120 N. Y. 73, 23 N. E. Rep. 988; May, Ins. (3d. Ed.) § 177.

By the first of the special clauses the risk is divided into two parts in case of a loss, so that the plaintiffs are to bear it to the extent

of $20 per barrel, and the defendant is to bear it only as to the additional value; and by the second the plaintiffs are authorized to contract with every transportation company so as to release the carrier from liability for any loss applicable to the defendant's part of the risk. By the latter clause the plaintiffs are also authorized to release the carrier wholly upon collecting indemnity for the loss upon their own part of the risk. Obviously it was quite immaterial to the defendant whether the plaintiffs, in case of loss, should collect their part from the transportation company or not. If they were to do so, the defendant would get nothing by it, nor could the defendant lose anything by the omission of the plaintiffs to collect. It is the manifest purpose of the provisions to give to the plaintiffs any indemnity for their own part of the loss which they may choose to require of the carrier, and it would be absurd to construe the provision as intending to compel them to indemnify themselves.

The language of the second clause does not, in terms, permit the plaintiff to release the transportation companies wholly from liability in advance of a loss; on the contrary, fairly interpreted, it contemplates that they shall not do so. It is usual for underwriters to insure the property at risk at something less than its full value, in order that the insured shall have an interest in preventing loss, to guard against his carelessness or dishonesty. Ang. Ins. § 92. As the risk here, upon property while in transportation by carriers, was to be largely affected by the vigilance of the carriers, it was natural that the defendant should wish to compel the transportation companies, in the event of a loss, to bear some of the consequences. The clause contemplates that the transportation companies, as well as the plaintiffs, should bear the risk to the extent of $20 per barrel. We are not called upon to determine whether a breach of this condition by the plaintiffs would afford a defense to the action, because no defense has been interposed based upon the theory that the plaintiffs violated their agreement not to release the transportation companies before a loss. If they had a right to release the railroad company after a loss, without accounting to the defendant, the defendant has not been injured in its right of recourse by subrogation. The judgment is affirmed.