[Civ. No. 1227.   Third Appellate District.—August 20, 1914.]

CALIFORNIA CANNERIES COMPANY, Respondent, v. CANTON INSURANCE OFFICE, LIMITED, Appellant.

MARINE INSURANCE—CONTRACT OF INSURANCE—CERTIFICATE ISSUED BY BROKERS—INTERPRETATION AND EFFECT.—A document issued by a firm of insurance brokers to a shipper of canned goods by steamer, certifying that they have insured the goods with a designated insurance company for a stated amount, loss payable to the assured, or order, on surrender of the certificate, and that it is agreed that the certificate represents and takes the place of the original policy and conveys all the rights of the original policy holder for the purpose of collecting any loss or claim as fully as if the property

were covered by a special policy direct to the holder of the certificate, and free from any liabilities for unpaid premiums, is not the contract or part of the contract of insurance, but presupposes the issuance of a policy of insurance and necessarily puts the holder upon inquiry to ascertain the terms of the policy in order to determine what rights are secured thereby.

ID.—ACTION FOR INJURY TO INSURED GOODS—EVIDENCE OF POLICY OR ITS TERMS.—In an action against the insurance company to recover for injury to such insured goods, the policy itself, or evidence of its terms, should be introduced in evidence to show the risks that were covered by the insurance and the extent of the defendant's obligation.

ID.—AUTHORITY OF BROKERS TO ISSUE CERTIFICATE—INSUFFICIENCY OF EVIDENCE TO SHOW.—In this action by the holder of the certificate against the insurance company to recover for injury to the goods while in transit, the evidence is insufficient to show that the brokers were authorized by the insurance company to issue the certificate.

ID.—ENGLISH POLICY CONDITIONS—EVIDENCE TO SHOW MEANING OF EXPRESSION.—If the certificate shows that the insurance was in accord-. ance with the "English policy conditions," the meaning of such expression becomes a proper and necessary subject of inquiry and testimony is admissible to establish such meaning.

ID.—WARRANTY AGAINST PARTICULAR AVERAGE—LOSS OF PART OF GOODS NOT SEPARATELY INSURED.—And if the contract of insurance, as thus established, shows a warranty free from particular average, there can be no recovery by the insured for parts of the goods, not separately insured, spoiled by leakage and afterward thrown away on the arrival of the vessel at its destination. In such event there is no total loss or a general average loss, but only a partial and particular average loss.

ID.—GENERAL AND PARTICULAR AVERAGE DEFINED AND DISTINGUISHED.— Particular average means a partial loss as distinguished from a total loss or a general average loss. General average is a contribution by the several interests engaged in a maritime adventure to make good the loss of one of them for voluntary sacrifice of a part of the ship or cargo to save the residue of the property and the lives of those on board from an impending peril, or for extraordinary expenses necessarily incurred for the common benefit and safety of all the interests in the adventure.

ID.—SEPARATE INSURANCE ON VARIOUS LOTS—BURDEN OF PROOF.—If the insured in such a case contends that there was separate insurance on the various lots of goods, the burden of proof is on him to establish his contention.

ID.—COLLISION AT SEA—ADMISSIBILITY OF EVIDENCE CONCERNING.—In such action it is proper for the insurance company to offer evidence that the vessel in which the goods were shipped had been injured in a collision. This is a circumstance tending to show that the vessel

was unseaworthy within the contemplation of sections 2681 and 2682 of the Civil Code, and therefore that the implied warranty of seaworthiness was violated and no liability on the part of the defendant attached.

ID.—CERTIFICATE OF INSURANCE—SUPPLEMENTING WITH THE PROOF OF POLICY.—If the insurer relies upon a certificate of insurance, on the injured goods "as per policy No. 76491 (English policy conditions), subject to all the terms and conditions of said policy," the certificate should be supplemented by proof. of the policy itself, if actually issued, or, if not actually issued, of the form of the policy to which the certificate refers.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Andros & Hengstler, and Golden W. Bell, for Appellant.

Asher, Myerstein & McNutt, and Barclay Henley, for Respondent.

BURNETT, J.—The action is on an insurance policy to recover damages caused by injury to certain canned goods shipped from San Francisco to New York. The alleged value of the goods was $8,098.00 and plaintiff sought to recover the sum of $2,567.95 and obtained judgment for $2,500.00. As to the policy and the risks covered by it, we find in the complaint the following allegation: "That on the 17th day of December, 1909, at said city and county of San Francisco, the said defendant in consideration of $121.47 to it then and there paid, executed to said plaintiff a policy of insurance upon said goods, whereby it promised to pay to the plaintiff within thirty days after proof of loss and interest, all loss and damage accruing to said plaintiff by reason of the destruction or injury of the said ship or of said goods during the ensuing voyage from the port of San Francisco to the port of New York; and wherein and whereby the said defendant undertook and promised to pay to the said plaintiff whatever damage should result to the said goods, occasioned by collision with any other vessel."

As to this the answer contains the following: "Admits that, on the 17th day of December, 1909, at San Francisco,

defendant executed to plaintiff a certificate of insurance upon 2920 cases canned goods shipped on board the steamship 'J. L. Luckenbach' on her voyage from San Francisco to New York, but denies that it then or there promised, in said certificate, or at all, to pay to plaintiff, within thirty days after proof of loss and interest, or proof of loss or interest, or at all, all loss or damage accruing to said plaintiff by reason of the destruction or injury of said ship or of the said goods during the ensuing voyage from the port of San Francisco to the port of New York, and denies that defendant therein and thereby or therein or thereby promised or undertook to pay to plaintiff whatever damage should result to the said goods, by any perils of the sea; but, on this behalf, defendant alleges that it then and there promised to insure plaintiff in accordance with the terms and conditions of its English cargo policy, and not otherwise."

While the terms and conditions of the "English cargo policy" are not set forth in the answer it is clear that an issue was presented as to whether the particular loss claimed by plaintiff to have been produced by the perils of the sea was covered by the policy which was issued.

As to this, the policy being the basis and measure of defendant's liability, it was, of course, incumbent upon plaintiff to show that by its said undertaking defendant promised to indemnify against whatever damage was shown.

Recognizing this duty, the plaintiff introduced in evidence, without objection, what is denominated: "Certificate of Insurance effected by Bates & Chesebrough." From the face of this certificate we quote the following: "This is to certify, that on the seventeenth day of December, 1909, there was insured with Canton Insurance Office, Ltd., eight thousand and ninety-eight dollars for account of California Canneries Co. on 2920 cases canned goods as per back, valued at sum insured per Str. 'J. L. Luckenbach,' at and from San Francisco, Calif., to New York. Loss, if any, payable to assured, or order, on surrender of this certificate. It is understood and agreed that this certificate represents and takes the place of the original policy, and conveys all the rights of the original policyholder (for the purpose of collecting any loss or claim) as fully as if the property was covered by a special

policy direct to the holder of this certificate, and free from any liabilities for unpaid premiums.

"(Sgd.)    BATES & CHESEBROUGH.

"Not valid unless countersigned by

"(Sgd.)

"Countersigned

"J. SERVAES."

On the margin of said certificate appear the capital letters: "F. P. A. E. C."

On the back of the certificate were the following words and figures:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| "A | N. | Y. | 350 | cases | canned | goods | for | $1015.00 |
| "B | N. | Y. | 300 | " | " | " | " | 810.00 |
| "C | N. | Y. | 500 | " | " | " | " | 1425.00 |
| "D | N. | Y. | 300 | " | " | " | " | 765.00 |
| "E | N. | Y. | 300 | " | " | " | " | 915.00 |
| "F | N. | Y. | 350 | " | " | " | " | 963.00 |
| "G | N. | Y. | 275 | " | " | " | " | 765.00 |
| "H | N. | Y. | 500 | " | " | " | " | 1275.00 |
| "H. & F. | N. | Y. | 45 | " | " | " | " | 165.00 |

2920                                                    $8098.00"

Julius Servaes was called as a witness for plaintiff to explain this document and after stating that he was in the employ of Bates & Chesebrough he testified: "That is a certificate issued by ourselves for insurance placed with the Canton Insurance Office. We handed that to Mr. Jacobs and received—and the Canton issued a policy themselves or certificate. Q. Well, which? That is the question, Mr. Servaes. You say a policy or certificate? A. Well, it was a certificate in this case, I think. Q. Yes, certificate, and that is the certificate, is it? A. No, this is our certificate. As you say, they were issued with the Canton Insurance Office. It says here distinctly, 'It is understood and agreed that the certificate represents and takes the place of the original policy.'" After some discussion between counsel as to whether a policy was actually issued by the insurance company, and if so, what had become of it, defendant, through its attorney, stated that a certificate was issued by defendant and handed to plaintiff and that said certificate was as follows:

"Canton Insurance Office, Limited, of Hong Kong. Parrott & Company, agents, San Francisco. This is to certify that California Canneries Co. are insured to the amount of $8098, valued at $8098 United States gold coin, for account of concerned, on 2920 cases canned goods marked (blank) shipped on board the 'S. S. J. L. Luckenbach,' on her present voyage from San Francisco to New York as per policy No. 76491 (English policy conditions).

"This certificate is subject to all the terms and conditions of said policy; and in case of loss payment will be made only upon its surrender properly indorsed and receipted. Loss, if any, payable in San Francisco to assured or order.

"In witness whereof, the undersigned on behalf of the said Canton Insurance Office, Limited, have hereunto set their hands in San Francisco this 30th day of December, 1909.

"Signed, PARROTT & Co., General Agents.

"(Signed) R. H. MENZIES, Secy.

"Approved: J. J. THEOBALD, Manager."

The two foregoing are the only instruments received in evidence which, by any possibility, could be claimed to constitute a contract of insurance. Of course, neither constitutes a policy of insurance as that term is generally used and understood, but it is not uncommon for an insurance company to issue a certificate or memorandum of insurance which may answer the purpose of a more formal policy or may operate as a temporary expedient until the policy itself can be issued.

Of the foregoing certificates it was insisted by the plaintiff that the first, designated "Exhibit A," constituted the contract of insurance upon which the action was founded. It was declared by plaintiff's counsel that it was "the only paper respecting the insurance." Defendant's counsel insisted that "counsel show his contract. He has now introduced a document showing a part of his contract, and showing that on the face of it that this is not the whole contract; and I insist before any further evidence be introduced in this case that the contract, the complete contract, shall be shown." Then the record shows the following: "Mr. Henley. What do you mean by the contract? Mr. Hengstler. The contract that he sues on in this case, the contract of insurance. Mr. Henley. Very well. We sue on this certificate. Mr. Hengstler. Read that certificate. It shows on the face of it that it is incom-

plete.  Mr. Henley.  No, it don't.  Well, the language speaks for itself.''  The second document as above set out was repudiated by plaintiff and, indeed, it was claimed that it had not been admitted in evidence.  The sole reliance was based upon said Exhibit A.

But it seems clear that said ''Exhibit A'' does not purport to be nor is it a contract or part of a contract of insurance. Appellant's contention is that ''Exhibit A'' is a ''mere memorandum made by Bates & Chesebrough, brokers for plaintiff, which informs its holders that Bates & Chesebrough have procured certain insurance upon certain goods from the Canton Insurance Office, Ltd.  It does not purport to insure.  It is simply a notice signed by Bates & Chesebrough, plaintiff's brokers, which certifies that they *have effected* insurance with a certain company.  Such is the explanation of this instrument made by plaintiff's own witness, Mr. Servaes.''  This statement of appellant is true as far as it goes, but the certificate means a little more than that.  It purports to assign or transfer to the plaintiff ''all the rights of the original policy-holder for the purpose of collecting any loss or claim.''  It thus presupposes the issuance of a policy of insurance and necessarily puts the plaintiff upon inquiry to ascertain the terms of said policy in order to determine what rights are secured thereby to the policy holder.

It is equally clear that the policy itself or evidence of its terms should have been introduced in evidence to show the risks that were covered by the insurance and the extent of defendant's obligation.  Assuming that said exhibit was admissible against defendant, it manifestly does not constitute the entire contract and it refers to another instrument which must be considered as a part of the complete agreement.

Moreover, for said exhibit to be of any force and effect against defendant it was, of course, necessary to show that said defendant authorized the execution of said exhibit or else that the principle of estoppel can be properly invoked. On neither ground, however, can respondent's position be maintained.  There is no contention of estoppel and the evidence is insufficient to warrant the conclusion that Bates & Chesebrough were acting as the agents of defendant.  It is true that the following appears in the direct testimony of Julius Servaes: ''Well, now, then, were Bates & Chesebrough authorized by the Canton Insurance Company to issue this

*paper?* A. Yes. Q. And pursuant to that authority you did issue the paper countersigned by yourself? A. Yes, sir.'' But his subsequent testimony shows that he was simply expressing his opinion as to the authority of Bates & Chesebrough. This appears from the following questions and answers: ''Q. Mr. Servaes, does the Canton Insurance Company know anything of this memorandum that Bates & Chesebrough delivered? A. That I really don't know. I think I told them—of course, it has some—Mr. Henley (interrupting). I want to know in plain terms about it. Mr. Hengstler. Wait a minute. Let him first answer the question. A. Well, it is really rather hard to recall this. It is two years ago. I don't know whether I actually told them that we had issued the certificate or not as far as that goes. Mr. Henley. Q. I want to know now in plain terms were Bates & Chesebrough authorized by the Canton Insurance Company to issue that paper? A. That I couldn't tell you.''

The only evidence to the point is directly opposed to the theory of respondent. Mr. Theobald, the marine manager for Parrott & Company, the Pacific Coast agents for defendant, testified that he had never seen ''Exhibit A'' ''before today in this court,'' that his office had nothing to do with the issuance of it, and that Bates and Chesebrough were not authorized by the Canton Marine Insurance Office ''to issue this kind of a document.'' He further testified that the other certificate to which we have already referred was the only one issued in this case by defendant. In fact, it seems quite apparent from the whole record that plaintiff must look to this certificate as the only basis for its cause of action. It is therefore vitally important that the terms of said certificate be understood and construed. That certificate shows that the insurance was in accordance with the ''English policy conditions.'' What that expression means is then a *proper* and, indeed, a *necessary* subject of inquiry.

Mr. Theobald was properly permitted to explain this technical term and he declared that ''all over the civilized world there is a standard form policy which was started in England, and which is used by all marine insurance companies, which is called the English cargo form policy. The main clause in this policy as well as I can recollect it is warranted free from particular average unless the vessel be stranded, sunk, burned, or the damage be caused by collision with another

ship or vessel. . . . And if I may be allowed to add to that, if the brokers required a different form of policy, what we call a policy of particular average design, they state on their application that they desire an English form policy, we will say, with a five per cent particular average clause added. . . . Q. In other words, if a merchant desires to insure his goods against partial loss there is a method of doing that, is there? A. By paying an additional premium at the time the risk is placed with the insurance company. And it is so stated on the application and on the certificate.''

Indeed, it is not denied that the law of marine insurance has always recognized two distinct classes of insurance, one against *total loss only* and the other against *total or partial loss,* and this distinction finds expression in section 2711 of the Civil Code: ''Where it has been agreed that an insurance upon a particular thing, or class of things, shall be free from particular average, a marine insurer is not liable for any particular average loss not depriving the insured of the possession, at the port of destination, of the whole of such thing, or class of things, even though it become entirely worthless; but he is liable for his proportion of all general average loss assessed upon the thing insured.''

''Particular average means a partial loss as distinguished from a total loss or a general average loss.'' (26 Cyc. 670.) Many cases are cited by appellant to illustrate the distinction, among them being *Chadsey* v. *Guion,* 97 N. Y. 333, wherein there was a policy on one thousand six hundred and fifty barrels of potatoes, ''warranted by the assured free from average unless general.'' The vessel arrived at its destination, and after one hundred and nine barrels had been unloaded it sank with the remainder on board. It was held that the insurers were not liable because of the warranty against particular average, there being no total loss.

''General average is a contribution by the several interests engaged in a maritime adventure to make good the loss of one of them for voluntary sacrifice of a part of the ship or cargo to save the residue of the property and the lives of those on board from an impending peril, or for extraordinary expenses necessarily incurred for the common benefit and safety of all the interests in the adventure.'' (36 Cyc. 372.)

It is entirely clear that within the meaning of these terms there was here no *total* loss or a *general average* loss but only a *partial* and *particular average* loss.

As pointed out by appellant, the goods insured are alleged in the complaint to be ''2920 cases of canned fruits to the value of $8098'' and the loss alleged is a particular average loss, to wit: ''That . . . said vessel became leaky while at sea, which caused the waters of the ocean to flow into and around and upon said merchandise . . . which resulted in the determination and spoiling of said merchandise to the extent of $2567.95, in which sum plaintiff has been damaged.'' The total damage was thus alleged to have been less than one-third the value of the goods and the evidence shows that *at most* 361 cases were totally lost. These, however, were thrown away after the vessel arrived at New York.

But, assuming that this loss was covered by the policy, it can be of no avail to plaintiff since there is no evidence that the various lots of goods were separately insured. There is no ground, therefore, for the contention that the F. P. A. clause should be separately applied to each of said lots.

''Where the subject matter insured is warranted free from particular average, the assured cannot recover for a loss of part, whether the policy be valued or unvalued, unless the contract contained in the policy be apportionable; but if the contract be apportionable the assured may recover for a *total* loss of any apportionable part.'' (Chalmers and Owen Digest of Marine Insurance, p. 119, 2d ed.) The only pretense for the contention that there was a separate insurance on the various lots of goods is based upon the said enumeration on the back of said Exhibit A; but, as already seen, that instrument does not constitute the contract of insurance between the parties. Moreover, upon the assumption that there was a separate insurance upon the various lots, there is no evidence that the said 361 cases constituted all of one of said lots, in other words, that there was a total loss of any of said lots. The burden of such proof is, of course, upon plaintiff. (*Merchants Mut. Ins. Co.* v. *Wilson,* 2 M'd. 217.)  It is equally clear that the evidence does not take the case out of the operation of said F. P. A. clause. The only pretense to the contrary is found in the suggestion that the damage was caused by a collision.

In the first count of plaintiff's complaint it was alleged "that said vessel while in the bay of San Francisco was run into and collided with the steamship 'Tallac'; that according to the information and belief of plaintiff said collision resulted in weakening one of the plates in the hull of the said steamship 'J. L. Luckenbach.'" While not expressly alleged, it must have been known to plaintiff that this collision took place before defendant insured said cargo. Plaintiff virtually admitted such to be the fact when it confessed the demurrer to the first count on the ground that it did not state a cause of action for the reason "that the allegations showed that the vessel 'J. L. Luckenbach' was unseaworthy at the beginning of her voyage." The trial was had on the second count of the complaint which contains no allegation as to said condition. The answer does allege, indeed, the collision as follows: "And in this behalf defendant alleges, on information and belief, that said steamship 'J. L. Luckenbach,' when she left the port of San Francisco, with plaintiff's merchandise on board, was in an unseaworthy condition, one or more of the plates in her hull having been weakened and damaged by a collision previously sustained," but, manifestly, this affords no warrant for the intimation that the collision occurred after defendant's liability arose. Indeed, respondent can hardly be serious in the claim since it objected to any evidence as to when the collision took place.

In this connection it may be said that we see no reason why it was not proper for defendant to offer evidence that the vessel had been injured in a collision. This would be a circumstance tending to show that the vessel was unseaworthy within the contemplation of sections 2681 and 2682 of the Civil Code, and therefore that the implied warranty was violated and no liability of defendant attached.

Other important points are made by appellant but we deem consideration of them unnecessary, further than to say that no judgment for appellant can be directed here upon this record. The findings support the judgment rendered for plaintiff but they do not warrant nor could they support a judgment for defendant. The most important question that we have considered, of course, relates to the insufficiency of the evidence to support a material finding of the court, and that error can be corrected only on a new trial.

We may suggest, in conclusion, that if on a new trial plaintiff cannot show that "Exhibit A" was authorized by defendant and it must rely upon the certificate admittedly executed by defendant, this certificate should be supplemented by proof of the policy itself if actually issued or, if not actually issued, of the form of the policy to which said certificate refers.

We think the judgment and order should be reversed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.