Joseph A. Boccia, J.
This is a holdover proceeding brought under subdivision (k) of section 8 of the Business Bent Law (L. 1945, ch. 314, as amd.).
The landlord alleges that he is the owner of the fee; that the tenant is a statutory tenant and occupies a store known as Store No. 2; that the landlord entered into a lease with the akbon market, Inc., for the stores numbered 2, 3 and 4, at an annual rental of $10,000 for a term of 10 years, said lease being noncancellable, and asked for a final order against the tenant, vincenzo barba, and the undertenant, luisa barba. *589 The tenant and undertenant filed a verified answer consisting of a general denial.
During the trial, the tenant raised three questions of law.
First, that the lease between the landlord and the akbon maeket, inc., is not for $10,000 per year for each year of the tenancy.
Second, that the said lease is not noncancellable as required by the statute.
Third, that the statute, subdivision (k) of section 8, does not apply in favor of a tenant presently occupying business space.
The lease in this case consists of two instruments, a printed form marked Exhibit 3 and a typewritten agreement marked Exhibit 4. These instruments were executed by the parties simultaneously and the question of law is: What constitutes the lease between the parties?
In Manufacturers Trust Co. v. Steinhardt (265 N. Y. 145, 148) the court held: “ [The rule] ‘ requires all papers and instruments relating to the same subject and executed simultaneously, to be read together, and as constituting, when thus read, a single contract or agreement.’ (Benedict v. Cowden, 49 N. Y. 396, 401.) ”
Paragraph “ B ” of the landlord’s Exhibit 4 reads as follows: “ Irrespective of provisions of our lease with you, the lease rental of $10,000.00 shall commence from the date possession of the three stores covered by said lease is obtained and given to you by the landlord. ’ ’
This obvious language of the instrument establishes that this is a lease for 10 years and there is no merit to the first point of law raised by the tenant.
As to the second point of law raised by the tenant, the undisputed facts are that in the lease marked Exhibit 3 there are two separate and conflicting provisions:
First, paragraph Seventeen, 2(c), contains a printed provision to the effect that if the tenant shall make default with respect to any other lease between the landlord and the tenant, the landlord may re-enter. We then have another provision in said lease, paragraph Thirty-Nine. This entire provision is typewritten and reads as follows: “ Notwithstanding any other provisions hereof, this lease shall be deemed to be noncancellable except for violation of any term or obligation hereof, and except for provisions permitting cancellation if the premises are taken by the exercise of eminent domain or if the premises are destroyed by fire.” The language used in this paragraph Thirty-Nine is the exact language as in the statute. *590 The question of law is which of the two provisions of the lease controls.
More than 100 years have passed since the Court of Appeals in Leeds v. Mechanics Ins. Go. (8 N. Y. 351 [Dec. 1853]) discussed this provision where the printed form of an instrument is in conflict with the written portion. Mason, J., said (p. 356): “ The parties have, by very clear language in the written part of the policy declared its character, and unless we give the printed portion superior significance contrary to all settled rules of construing such instrument * # # ”.
That decision was followed in Chadsey v. Guion (97 N. Y. 333, 339 [1884]) where Ruger, Ch. J., said: “It scarcely needs the citation of authority to support the long-established rule that the printed portion of a contract, when repugnant, must be subordinated to those which are written, and that the latter are presumed, from the circumstance of their special and deliberate insertion by the parties, to embrace the real intent and meaning.” (Citing Leeds v. Mechanics Ins. Co., 8 N. Y. 351; Harper v. Albany Mut. Ins. Co., 17 N. Y. 194; Harper v. New York City Ins. Co., 22 N. Y. 441.)
•These cases were followed in Kratzenstein v. Western Assur. Co. (116 N. Y. 54, 57), and followed by Birnbaum v. Jamestown Mut. Ins. Co. (298 N. Y. 305, 311 [1948]) where Conway, J., states: “‘Where a contract contains two repugnant provisions, the one printed and the other written, it is well settled that the latter must control the interpretation of the instrument, as it is presumed to express the latest intention of the parties. ’ ”
We thus find that there can be no question that the typewritten paragraph Thirty-Nine controls and, since this paragraph contains the exact language of the statute, that the lease in question is a noncancellable lease and complies with the statute.
As to the third question of the law raised by the tenant to the effect that the statute does not apply in favor of the tenant presently occupying business space in the same building, subdivision (k) of section 8 of the Business Rent Law is clear and not ambiguous and by its term any person, whether a tenant or not, can enter into a lease with the landlord upon complying with the conditions precedent described in said statute.
It is not for the court to rewrite the law and it is bound by the language used by the Legislature. Further, there is nothing in the record to show that there ever was or now is *591 any lease between the akron market, ino., and the landlord here, except the one which is the basis of this proceeding.
The court finds that the landlord, by a fair preponderance of the evidence, has established to the court’s satisfaction that the lease to the akron market, ino., is a bona fide lease, that the landlord is acting in good faith and has complied with all provisions of subdivision (k) of section 8 of the Business Ren Law.
Final order is therefore directed in favor of the landlord awarding possession of the premises. Warrant stayed to May 13,1957.