## THOMAS F. MEAGHER *vs.* JAMES DRISCOLL.

A grantee who has buried the remains of his child in a lot in a cemetery, of which he holds possession under a deed from the proprietor which sets forth that such grantee is entitled to the lot, *habendum* to him and his heirs and assigns, to his and their use as a place of burial for the dead, may maintain an action of tort in the nature of trespass *quare clausum fregit* against the superintendent of the cemetery for disinterring and removing the remains therefrom, although the cemetery has never been licensed under the Gen. Sts. c. 28, § 5, for purposes of burial, and although the plaintiff's deed is on condition that the lot shall not be transferred without consent of the proprietor, and shall be subject to his regulations in the care and management of the cemetery; and in measuring damages the jury may take into consideration the injury of the plaintiff's feelings, if it appears that the defendant acted in wilful disregard or careless ignorance of the plaintiff's rights.

TORT in the nature of trespass *quare clausum fregit* for the removal of the remains of the plaintiff's deceased child from Lot No. 4 in Holyhood Cemetery in Brookline, on September 23, 1865. Answer, that the plaintiff had forfeited any right of burial which he ever had in that lot, and that the defendant removed the remains and buried them elsewhere in the discharge of his duty as superintendent of the cemetery.

At the trial in the superior court, before *Ames,* C. J., there was evidence that in December 1863 the plaintiff selected the lot on account of its neighborhood to a place where the remains of his father were buried; paid to the defendant (who was in charge of the cemetery as superintendent) five dollars towards the purchase of it, which was all that he was required to pay at that time; and soon afterwards buried there the remains of the child. The evidence was conflicting as to the length of credit given for the balance of twenty-five dollars due on the price of the lot; the plaintiff testifying that he was told to pay as soon as he could do so conveniently, and the defendant testifying that the sale was on condition that the balance of the purchase money should be paid in thirty days.

There was also evidence that in February 1865, by the direction of the plaintiff, who was then living in Woburn, his wife went to the defendant's house and paid the balance to the defendant's son, who was then acting as superintendent of the cemetery in the absence of his father by reason of sickness, and

who delivered to her the following deed, and entered the transaction on the defendant's official records; and that in the following September the remains of the plaintiff's child were disinterred, and removed by the defendant to a lot known as a "charity lot," and there buried in a grave containing two other bodies.

"Holyhood Catholic Cemetery. Brookline, Mass., Dec. 6th, 1863. Mr. T. F. Meagher, having paid thirty dollars, the receipt whereof is hereby acknowledged, is entitled to one Lot, No. 4, in Holyhood Cemetery, to have and to hold the same to said Meagher, his heirs and assigns, to his and their use as a place of burial for the dead; yet upon the following conditions, to wit: That said lot shall not be transferred without the consent of the proprietor; shall be subject to the regulations made or to be made in the care and management of said cemetery by the proprietor, who shall also have the right to prevent the erection of any offensive or improper monument or inscription thereon; that no remains shall be deposited therein for hire; and that persons dying in drunkenness, duel, or by selfdestruction, unbaptized, non-Catholics, or otherwise opposed to the Catholic Church, shall not be there interred. In case of a violation of any of the foregoing conditions, said premises shall revert to me, the said proprietor, my legal heirs and assigns. Three dollars will be charged for every opening of graves after the first. Jos. M. Finotti. Witness, James Driscoll. Lot No. 4, Walk A, Left. By instrument recorded February 1st, 1858, lib. 262, fol. 267, in the Dedham Registry of Deeds, the cemetery is bonded to the Rt. Rev. J. B. Fitzpatrick, Bishop of the Diocese of Boston."

The defendant introduced evidence that, when he recovered from his sickness and resumed his duties, not knowing that the lot had been paid for, he made inquiry for the plaintiff's residence and wrote several letters to give him notice that the lot would be sold to another person unless it should be paid for; that, not hearing from the plaintiff, nor receiving any answer to his letters, he sold the lot to another person, and removed th body. There was a conflict of evidence as to the condition of

the lot to which it was removed, some witnesses representing it as wet and marshy, but the majority as being unobjectionable, and not materially different from the other lots.

It appeared " that the cemetery was first opened in August 1857, and that the title to the various lots or rights of burial proceeded from the Reverend Joseph M. Finotti, (whose title was not controverted,) by instruments in same form " as the deed quoted. No evidence was offered of any permission from the town of Brookline to make burials in the cemetery, and the defendant insisted that for that reason the plaintiff was barred by the Gen. Sts. *c.* 28, § 5, from maintaining the action; but the judge ruled otherwise.

The defendant then contended " that, as the action was an action for trespass on real estate, the plaintiff could at all events only recover for the actual damage done to such real estate; and that, the alleged trespass on the lot and removal of the body not being wilful or with wrongful intent, but wholly from accident and mistake, the plaintiff for that reason also would be restricted to nominal damages only; " and further, that he could not recover at all, because the execution of the deed quoted, and the payment therefor to the defendant's son, did not invest him with a title which would support the action. But the judge ruled " that, as the plaintiff was in possession of the lot, having selected and taken the instrument usually given to purchasers of lots, and was holding and using the lot for the purposes and in the manner intended by the terms of the instrument, he was entitled to maintain the action; that, if it appeared that the defendant had acted in the removal of the body of the child either with a wilful disregard of the plaintiff's rights, or under a mistake arising from gross carelessness and want of ordinary attention or diligence in making proper inquiry, and with the opportunity, by means of his records or by inquiry, to know that the plaintiff had paid for the lot, the jury in assessing damages would have a right to consider the injury to the plaintiff's feelings, and would not be restricted to the mere pecuniary loss or damage to his property."

The jury returned a verdict for the plaintiff, assessing dam·

ages in the sum of $837.50; and the defendant alleged excep-
tions.

*A. Russ,* for the defendant.

*R. D. Smith & W. Emery,* for the plaintiff, were not called
upon.

FOSTER, J.  By the common law, " though the heir has a prop-
erty in the monuments and escutcheons of his ancestors, yet he
has none in their bodies or ashes ; nor can he bring any civil
action against such as indecently at least, if not impiously, vio-
late and disturb their remains when dead and buried.  The
person, indeed, who has the freehold of the soil may bring an
action of trespass against such as dig and disturb it ; and if any
one, in taking up a dead body, steals the shroud or other apparel,
it will be felony, for the property thereof remains in the executor
or whoever was at the charge of the funeral."  2 Bl. Com. 429.
*Corven's case,* 12 Co. 105.  *Haynes's case,* Ib. 113.  3 Inst. 202.
*The King* v. *Lynn,* 2 T. R. 733.

A dead body is not the subject of property, and after burial
it becomes a part of the ground to which it has been committed,
" earth to earth, ashes to ashes, dust to dust."  The only action
that can be brought for disinterring it is trespass *quare clausum.*
But any person in the actual possession of land may maintain
this action against a wrongdoer.  *Barnstable* v. *Thacher,* 3 Met.
243.  The title of the plaintiff was more than a burial right in
soil the freehold and possession of which remained in another.
The written instrument from Father Finotti, the owner of the
fee, conferred a right to the exclusive occupation of a particu-
lar lot.

We cannot presume that land actually devoted to the pur-
poses of a cemetery is not legally so used, from the absence of
evidence that the burial ground had been licensed by the muni-
cipal authorities.  No such defence is set up in the answer; or is
ppen to a mere trespasser, who, without any legal authority, un-
dertakes to disturb another in the use he makes of land of which
he is in peaceable possession.  The present action is therefore
maintainable upon the count in the nature of trespass *quare
clausum.*

The measure of damages was correctly stated. The gist of the action is the breaking and entering of the plaintiff's close. But the circumstances which accompany and give character to a trespass may always be shown either in aggravation or mitigation. *Bracegirdle* v. *Orford*, 2 M. & S. 77. *Merest* v. *Harvey*, 5 Taunt. 442. *Brewer* v. *Dew*, 11 M. & W. 625. He who is guilty of a wilful trespass, or one characterized by gross carelessness and want of ordinary attention to the rights of another, is bound to make full compensation. Under such circumstances, the natural injury to the feelings of the plaintiff may be taken into consideration in trespasses to real estate as well as in other actions of tort. Acts of gross carelessness, as well as those of wilful mischief, often inflict a serious wound upon the feelings, when the injury done to property is comparatively trifling. We know of no rule of law which requires the mental suffering of the plaintiff, or the misconduct of the defendant, to be disregarded. The damages in such cases are enhanced, not because vindictive or exemplary damages are allowable, but because the actual injury is made greater by its wantonness.

*Exceptions overruled.*