Brown, J.
I find that the defendant in the disposition
that has been made, and in that that he proposes to make, of the body of his deceased wife, is carrying out her wishes as expressed to him shortly prior to her death. Mrs. Marinus’had a fear that she might be buried alive. I do not think that she had any objections to having her dead body placed in the ground. She so expressed herself to her husband and gave directions as to the disposition of her body after death. Those directions he is endeavoring to carry out. The husband’s right to the custody and control of his deceased wife is sustained by the current American authorities.* He has a right to select the permanent place of burial of her body and he is liable for such burial. The receiving vault was not intended as the permanent resting place for the body. The body was placed there in deference to the wife’s wishes to be there for three months. The husband has the right to select the permanent burial place of the body, and in the performance of this duty he should not be interfered with.
The defendant must have judgment.
Baker, Burial Laws, 5th ed. (London, 1882).
*76 Burn, Ecclesiastical Law, 9th ed., vol. 1 (London, 1842), 256-274.
Chareyre, Inhumations, Sépulture et Exhumations, Paris, 1884.
Dodd, Burial Acts and Fees, London, 1880.
Gaubert, Jurisprudence sur le monopole des inhumations et pompes fúnebres, Paris, 1875.
Glen, Burial Board Acts, 4th ed., London, 1881.
Hoffman, Ecclesiastical Law (N. Y., 1868), 219-242.
Lipenius, Bibliotheca Bealis Jurídica (16-18th Century Works) tits. Coemiterium, Epitaphia, Sepulchrum, etc.
Phillimore, Ecclesiastical Law, Vol. 1 (London, 1873), 839-888.
Scott, Burial Acts, 6th ed., London, 1858.
Snyder, Religious Corporations, Burial Grounds, New York, 1879.
Spellman, De Sepultura (English Works, Lond., 1723), 175-190.
Tyler, American Ecclesiastical Law (Albany, 1866), 418-511.
Wait, Actions and Defences, vol. 2 (Albany, 1877), 127-133.
Grave Yard Law, C.B. Elliott, 16 Cent. Law Jour. (1883), 161-167.
Law of Funerals and Graves, R. V. Rogers, Jr., 18 Alb. L. J. (1878), 485-488.
Property in Cemetery Lots, Wm. C. Schley, 19 Am. L. Reg. (N. S.) (1880), 1-10, 65-76.
Law of Burial, Sam’l B. Ruggles, 4 Bradf., 503-532.
Lot Holders in Church Cemeteries, 17 Am. L. Rev. (1883),196-201 ; 19 Am. Rep. (1877), 80.
Law of Burials, 20 Journ. of Juris., Edin. (1876), 120-127.
Laws of Burials, Tombs, Monuments, Remains of Deceased Persons, Sales of Bodies for Dissection, etc. N. C. Moaks’ Note of Cases, 12 Eng. Rep. (1876), 656-670 ; 18 Id. (1878), 426-9 ; 29 Id. (1882), 628-9.
The Burial Laws, 17 Irish L. Times, Dublin (1883), 474-475.
Litigation as to Burials, Late Cases, 10 Alb. L. J., 80 ; 13 Id., 140.
Ecclesiastical Burial, Guibord Case, Montreal, 6 Law Rep. Privy Council, 157-220.
Burial-Grounds, When a Nuisance, 17 Canada L. J., Toronto (1881), 204-206; 7 Am. L. Reg., N.S. (1868), 81-88.
Municipal Ordinances as to Interment. Freeman’s Note of Cases, 34 Am. Dec. (1882), 636-637.
Ranch, Intramural Interment, Chicago, 1866.
Law of the XII Tables as to Intramural Interment, Voigt XII Tafeln,. Leipzig, 1883.
New York City Prohibitory Ordinance, N. Y. City Ord. (1827 ed.), 91-94.
Property in Gravestones, Op. by C. J. Richardson, 4 N. H. (1828), 416-417.
Funeral Expenses, Schouler on Executors (1883), secs. 398, 421-2 ; Williams on Exec., vol. 2 (1877 ed.), 1035-6.
Damages for negligently mutilating a corpse, 21 Centr. L. Jour.(1885), 262 ; 24 Amer. L. Reg., N.S. (1885), 586-600.
Cremation of the Dead, 26, Jo. of Jurisprudence (Edinb’gh) (1882), 568-575 ; 16 Cent. L. J. (1883), 465-468; 12 Am. L. Record (1883), 1-6.
*77 The Legality of Cremation, 17 Law Jour., London (1882), 149-50 ; 23 Am. L. Beg., N. S. (1884), 56.
Property in Dead Bodies, I. G. Thompson, Note of Cases in 14 Am. Rep. (1875), 676-678 ; 4 Alb. L. J., 56-67; 6 Alb. L. J., 151-154; 24 Am. L. Reg., N. S. (1885), 591-600 ; 12 Eng. Rep. (1876), 659-665.
Rights and Duties of the Husband as to the Corpse of His Wife, 4 Alb. L. J., 56; 20 Id., 401; 10 Week. L. Bull., 205-206.
Legal Custody of Dead Bodies, Jno. F. Baker, 10 Alb. L. J., 70, 96.
Dissection and Resurrection, R. V. Rogers, Jr., 38 Alb. L. J. (1883), 106-108.
The Ownership of a Corpse before Burial, R. S. Guernsey, 10 Cent. L. J. (1880), 303, 325 ; F. L. Wellman, 14 Am. L. Rev. (1880), 57-66 ; M. D. Ewell’s Note of Cases, 21 Am. L. Reg., N. S. (1883), 513-514 ; F. K. Carey, 19 Am. L. Rev. (1885), 251-270.
Dust to Dust, Legal Property in Dead Bodies, 9 Solic. Jour., London (1864), 3-5.
Removal of Corpses after Burial, R. S. Guernsey. The Sanitarium, Sept., 1882, pp. 519-536.
Burial Grounds, Removal of Remains. Notes of Cases, 32 Am. Rep. (1880), 424-429 ; 16 Am. L. Reg., N. S. (1877), 157, 163.
Unlawful Disinterments in Graveyards, 42 Quarterly Rev., 1.
Removal of Remains in Cities, Laws N. Y., 1878, chap. 349.
Chinese Disinterments, 6 Sawyer (1880), 237.
Orfila, Medicine Légale et Exhumations Juridiques, vol. 3 (Paris, 1848), 58-113.
Inscriptions on Tombstones, 12 Alb. L. J., 2, 32, 113, 176.
Violation of Tombs, 26 Jour, of Juris. (Edinb’gh) (1882), 45-46.
Gifts for the Repairs of Tombs, 16 Solic. Jour. (1872), 548-9.
The Use of Metallic Coffins, Op. by Lord Stowell, 2 Hagg Cons. (1821), 333 Materials of Coffins, Wickes’ Sepulture (1884), 95-104.
Addenda by John H. Corwin, Esq.
In re Petition of Trustees, etc., 7 Reporter, 630.
Urn Burial, Sir Tlios. Browne.
Lowry v. Plitt, 16 Am. L. Reg., N. S., 155; and Note by the Editor; also XI. Am. L. Rev., 781 (as to contests between next of kin of equal degree).
Burial in Cases of Contagious Diseases, by Rev. Eli Corwin, D. D., in Biennial Report of Wisconsin State Board of Health, 1885.
Adams, Cremation and Burial, Boston.
Eassie, Cremation and Burial, London.
Haden, Earth to Earth, London.
Thompson, Cremation, London.
VIII Popular Science Monthly, 333, Article on Burial Law.
*78 Note.—In Segord v. Secor (N. Y. Supreme Court, Second District, Special Term; October, 1870), it was held in an action by the widow of the deceased to enjoin the removal of his remains by one of his children contrary to her will, after she had properly buried them at her own cost, that the plaintiff was entitled to the relief sought.
The law casting upon the widow the duty of administration and of burial of the deceased, it will leave it to her discretion as to how that duty shall be performed, and when, pursuant to her decision, the body has been properly interred, no removal will be allowed unless all parties interested consent thereto.
Trial by the court.
The material facts appear in the opinion.
Wm. 3. & D. M. Van Oott, for the plaintiff.
B. McK. Ormsby, for the defendant.
Pratt, J.—This action in many respects is novel, and required that some of the reasons for the decision should be stated more fully than they appear in the conclusions of law and fact.
The suit is by a widow against the son of her deceased husband by a former wife, praying for an injunction to prevent him from removing the remains of his father from the place where the plaintiff, with the acquiescence of all parties concerned, had caused them to he interred. '
The question strictly necessary to be discussed is whether one of the children of a person deceased has a right to remove the remains, contrary to the will of a widow surviving, who has had them properly buried.
I have been unable to find any case decided in this State where this precise question has been raised.
The defendant’s counsel cited a case to be found in 3 Edw., 155 (Matter of Brick Presb. Ch.), and claims it as an authority for the doctrine that the ne£t of kin have not only the right to determine the place of burial of' a deceased person, but have a right to remove the body to such place as they shall deem proper.
A slight examination of that case will show that it establishes no such principle.
The only question before the court in that case was, whether Mrs. Smith, daughter of the deceased, in her own behalf and in that of others the next of kin, and no one objecting, should he permitted to remove the remains to another place, and allowed her expense for so doing. The land in which the vault containing the remains was situated had been sold, and the removal of the bodies authorized by law. The church was required to pay the expenses of the removal of all bodies in the churchyard, and the question arose between the church and next of kin, on the application of Mrs. Smith, as before stated, that she should for herself and others remove the remains to such place as she desired, and should be paid therefor instead of the removal being made by the church. The church made no opposition, and the prayer of the petition was granted.
*79 The distinction between that case and the case at bar is too apparent to require much comment. In that case all the next of kin were upon one-side and the church upon the other. Again, the removal had been authorized by law, and it was merely a question of who should remove, as between the parties before the court. In the present case there is but one of the next of kin claiming the right to remove, while on the other side there is a widow, who has caused the burial to be made and paid the expense thereof out of her private estate. Again, what is more controlling, the removal has not been authorized by law, and no necessity shown for it, aside from the mere desire of the defendant that it should be done.
Assuming that there is no case in this State controlling our decision, let us consider what principles ought to be applied to the facts in this action.
í'he legislation in this country and in England through a long series of years seems to recognize an executor as the person having the lawful possession of the remains, and the one upon whom the duty devolves of properly burying them. (2 Wms. on Ex., p. 968 et seq.; 2 R. S., 71.)
There has been much legislation on the subject of the removal of the dead, but it is unnecessary to examine the various enactments, except to ascertain that the uniform policy has been to provide a proper burial of the dead, and to protect amply the grave from violation. (Statute N. Y., 1794, and amendments to, in 1870.*)
In every case the duty is enjoined upon some one by law to bury the dead, and it is clear that it is a duty the court will not only enjoin but the discharge of the duty will protect. Usually this care rests upon the executor.
The case of the Queen v. Fox (2 Q. B., 246), was a mandamus to a jailor to deliver a body to an executor for interment, the jailor claiming to detain the remains on an execution against the body of the deceased. The return of the defendant was overruled and the writ allowed.
The cases of Ambrose v. Kerrison, 10 C. B., 776, and Jenkins v. Tucker, 1 H. Bl., 90, decided that a husband is bound to bury his wife.
The case of Chapple v. Cooper, 13 M. & W., 252, held a widow who had ordered the funeral of her husband liable for the expense although she was an infant at the time, the expense being deemed necessaries.
A stranger even, in whose house the body is, may cause it to be buried and pay the expense out of the effects of deceased (Tugwell v. Heyman, 3 Campb., 298, and note). It may well be considered as settled that the courts can compel the proper burial or disposition of any dead body, and in case of controversy between several parties determine their rights in the premises.
Hot only is this a clearly recognized principle of law in the books, but it has become so familiar in every-day life that scarcely a person dies of the age of discretion, that does not in some manner provide for the discharge of *80 this sacred, duty. This is not only proved hy the numerous embellished cemeteries of our country, but almost every will that is made contains a provision of this kind. How, if it is conceded that the law devolves the -duty upon an executor irrespective of any direct provision of the will, why may not the same reason be invoked for the administrator or party upon whom the duty of administering devolves ?
The statutes have wisely declared who shall he administrators and the •order of their appointment, while the appointment of an executor is left to the testator, and the person selected is often one having no ties of blood or family. But take a case where the body has been buried in a proper place, without dissent, upon what ground can the next of kin claim the right to remove against the will of the surviving wife or husband ? For, if the next of kin can remove a deceased father or husband, they can with equal claim of right remove a deceased wife or mother. It cannot be upon the ground that they have an interest in the body as property, for it is clear there can be no property in the corpse. *
Hot only is all the legislation consistent with this idea, hut the subject has been repeatedly discussed and settled in judicial decisions. (2 East. Pl. C., 652; 2 Bl. Com., 429 ; 4 Bl. Com., 236.) If the party who furnishes the habiliments and coffin retains a property in them after burial, and probably he does, sufficient to insist that no other person shall remove and convert them to another purpose, then if the doctrine of the defendant be true, we should have the spectacle of a body taken naked from a grave where a wife had placed it, and thence transported to another place.
But if there is no property in a corpse, what right has the next of kin to remove it more than a stranger ? Hone whatever, except in cases where a removal is necessary; then, it is more in consonance with the feeling of respect which exists towards the dead, that those bound by ties of love and respect to the deceased while alive should render those sacred offices to the dead body, rather than that they should be performed by strangers.
The remedies were ample in the common law to protect graves. A suit for trespass could be maintained by the owner of the land or person having charge or custody of it, against any person disturbing a grave, and the party who had caused the burial, or next of kin, could bring an action for any injury done to the monuments erected by them over the grave, or for carrying off the coffin and habiliments furnished by them, and could even maintain a bill in equity to prevent such injury or removal. Matter of Brick Presb. Ch. (3 Edw., 155).
*81 In addition to these civil remedies, protection was enforced by indictment. (Reg. v. Sharp, 3 Jur. (N. S.), 192; Commonwealth v. Viall, 2 Allen [Mass.], 512.)
These cases fully sustain the doctrine that there is no authority for saying that relation will justify the taking of a corpse away from the grave where it has been buried, without the consent of all parties interested ; that no matter how nearly related the party may be, or by what motive he may be actuated, he has no right to disturb the grave.
This principle, so clearly established in common law, and enacted even in statutes, is decisive of this case, but I apprehend it is not alone upon a total want of authority in the defendant to remove the remains and the grounds before stated, that the plaintiff is entitled to the relief prayed for in her complaint.
The law made it her duty to bury the deceased and pay the expenses out of his personal estate, if he had any, and if he had none, then to pay them from her own estate. She had performed this duty in a proper manner. It rested in her discretion, as long as she did nothing to offend public decency or endanger the public peace and safety, to determine the place where, the time when, and the manner in which the deceased should be buried. This discretion necessarily accompanied the duty which the law imposed upon her.
The law cannot be so unreasonable as to provide that the duty to bury shall devolve upon one party, and the discretion as to how it shall be performed upon another party ; that one shall pay the expense of burial, and the other determine the manner in which it is tobe done ; that one shall perform the burial, and another decide where it shall take place.
It is reasonable to presume that the person who is to administer the estate and is supposed from daily intimacy and association with the deceased to know what is fit in regard to the matter of burial, taking into consideration the amount of assets, the condition and feelings in life of the deceased and his family relations, should decide these questions, and that when once they are decided, the determination should stand until all parties interested consent to a change.
There are cogent reasons connected with public policy and the peace of families why in the absence of testamentary disposition, the possession of a corpse and right to determine its burial should follow the administration of the estate ; and proper respect to the dead, a regard for the sensibilities of the living, and the due preservation of the’public health, require that corpses should not be disinterred and transported from place to place, ■except under circumstances of extreme exigency.
Again, scarcely an adult dies that does not leave numerous relatives of the same degree of relationship. Suppose each of the next of kin desire a different place and different form and ceremony of burial, who then will determine the questions ? And will the public wait for a judicial decision to adjudicate the rights of the parties ?
In the absence of a testamentary direction, is it not better that the hus *82 band should bury the wife, and the wife the husband, than that the door should be opened to an unseemly contest between the surviving parent and the next of kin ?
In cases of gross abuse of this discretion, an appeal can be had to the-courts, but in the first instance, it is more in accordance with reason and the spirit of this enlightened age, that it should be left where all. the analogies of the law place it—in the hands of the surviving wife or husband.
A recent case decided in the Supreme Court of Pennsylvania (Wynkoop v. Wynkoop, 42 Penn St., 293) sanctions some of the views herein expressed, while a case in Indiana holds that a corpse descends as property to the next of kin ; but this latter view, I apprehend, is sustained neither by adjudication elsewhere, nor by principle that will find favor in our courts.
In this case the deceased died in the plaintiff’s house. He left no-testamentary or other direction as to his burial; the plaintiff, without objection on the part of the next of kin, buried him in the churchyard where they had always attended church. She paid for the cofiln and habiliments in which the deceased was laid out of her separate estate. The defendant, without her knowledge and against her will, prepared another place and removed the remains ; there are other children of the deceased,, but they take no part in this contest. The defendant comes into court and insists that he has a right to remove the remains by virtue of his relationship.-
Upon these facts, irrespective of the question as to whether the right to bury follows the administration of the estate, I think the plaintiff is entitled to judgment.

Law Literature of Burtal-Grounds, Burials, etc., by W. H. Winters, Esq., Assistant Librarian of the N. T. Law Institute. Andre, Droit de la Sepulture (Paris, 1876).

 As to protection of graves from violation, see L. 1789, c. 3 ; L. 1801, c. 124; L. 1819 (p. 279), § 1; amended by L. 1879, c. 24.

 An administrator cannot maintain an action for the negligent or wilful mutilation of the body of the deceased "intestate, hut he may sue for injury to the wearing apparel. Bo held, where the intestate had been murdered, and placed on the track of the defendant, a railroad company, and run over several times hy its cars. Griffith v. Charlotte, etc., R. R. Co., 23 So. Car., 25 ; s. c., 55 Am. Rep., 1.
There is no property in a corpse, and it cannot be an export. In re Wong Yung Quy, 6 Sawy., 443, 449.