WEHLE et al. v. UNITED STATES MUT. ACC. ASS'N.

(Superior Court of New York City, General Term.    January 7, 1895.)

1. ACCIDENT INSURANCE—RIGHT TO EXAMINE BODY.
   A provision in a policy that "any medical adviser of the association shall be permitted to examine the person or body of the insured, in respect to any alleged injury or cause of death, when and as often as may be required by the association, and, in case of a post mortem examination by or on the part of insured's representatives, the association shall be given opportunity to attend and participate," only authorizes an inspection of the body while it is unburied, and does not mean that the association may have the body exhumed.

2. SAME—RIGHT TO MAKE AUTOPSY.
   A provision in a policy that the insurance shall not extend to injuries of which there is no visible mark, or cover accidental injuries or death resulting from certain specified causes, does not give the insurer the right to make an autopsy, on the ground that he may find something which would exempt it from payment of loss.

3. SAME—VISIBLE SIGNS OF DEATH—DROWNING.
   Where the dead body of insured was taken from the water, and water ran from the mouth, and the body seemed to be filled with water, there are visible and external signs of drowning as the cause of death.

Action by Charles Wehle, executor, and others against the United States Mutual Accident Association.    The court directed a verdict in favor of defendant, and ordered plaintiffs' exceptions to be heard at general term in the first instance.

The action was upon an accident insurance policy issued to plaintiffs' testator, Henry Wehle, whereby the defendant insured him in the sum of $10,000 against bodily injury through violent and accidental means, from which death should ensue.    The plaintiffs proved, without contradiction, that the insured met his death by accidental drowning near Far Rockaway, September 4, 1893, and that the coroner's jury which held the inquest upon the body returned a verdict to that effect.    The result of the trial was by the decision of the presiding judge made to depend upon the seventh defense, which alleges that the plaintiffs violated a certain provision of the policy by refusing to give the defendant "the opportunity to examine the body of said Henry Wehle in respect to the alleged cause of death." On this ground the court held with the defendant, directed a verdict in its favor, ordered that the plaintiffs' exceptions be heard in the first instance at general term, and that entry of judgment be suspended in the meantime.    The plaintiffs now apply for a new trial on the exceptions taken, and the defendant moves for judgment on the verdict.    Code, § 1234.

Argued before McADAM and GILDERSLEEVE, JJ.

Charles Wehle and N. Myers, for plaintiffs.
Peet, Smith & Murray, for defendant.

McADAM, J.    The condition of the policy on which the defendant relies for a defense provides that "any medical adviser of the association shall be permitted to examine the person or body of the insured, in respect to any alleged injury or cause of death, when and as often

as he requires, on behalf of the association, and, in case of any post mortem examination by or on the part of insured's representatives or beneficiaries, the association shall be given opportunity to attend and participate." Neither the representatives nor the beneficiaries of the insured directed an autopsy, and hence the medical adviser of the defendant was not by the language or intent of the condition authorized to attend, make one, or assist in making one. "Post mortem examination" means an examination of a body after death, and does not necessarily imply an autopsy, which is the examination of a dead body by dissection to ascertain the cause of death. To "dissect" means to cut apart or to pieces, and the scientific mode is pointed out in Wharton & Stillé's Medical Jurisprudence (volume 2, 3d Ed., § 1010, subd. 4). The condition does not expressly authorize autopsy or dissection; nor can the power be implied, for the act would be unlawful without the assent of the deceased or his next of kin. Pen. Code, §§ 305, 308, 309. The deceased in his lifetime gave no such consent, and the next of kin were under no obligation to give their assent. The provision which gives the defendant's medical adviser the right to examine the body means scrutiny, investigation, and inspection while the body is unburied. The defendant in its answer admits that it received immediate notice of the death, and if it failed to avail itself of the privilege of examination before burial the right was waived. The deceased met his death September 4, 1893, was embalmed, and buried September 9th; so that the defendant had five days within which to assert and exercise its right to examine the body, if it had chosen to avail itself of the opportunity. The provision cannot be extended to mean that the defendant, after burial, had the right to exhume and dissect the body "when and as often as he [the medical adviser] requires." Even if the language of the condition could, by any logical reasoning, furnish argument for the existence of the right stated, it would be strictly construed against the person making such an unusual and unnatural claim. Kratzenstein v. Assurance Co., 116 N. Y. 54, 22 N. E. 221; Foot v. Insurance Co., 61 N. Y. 571; Hoffman v. Insurance Co., 32 N. Y. 405. It is settled law that a provision entailing a forfeiture or limiting liability must receive a strict construction. It cannot be extended by interpretation so as to include a case not clearly within the words. Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309; Rann v. Insurance Co., 59 N. Y. 387. Moreover, the condition upon which the defense is based was to operate upon the contract of insurance only subsequent to the fact of a loss. It must, therefore, receive a liberal and reasonable construction in favor of the beneficiaries under the contract. McNally v. Insurance Co., 137 N. Y. 389,. 33 N. E. 475; Trippe v. Society, 140 N. Y., at page 26, 35 N. E. 316. The condition of the policy requiring immediate notice of death and the provision for examination of the body are to be construed together, the former being in aid of the latter, and to enable the defendant to exercise whatever liberties it confers.

The defendant's counsel frankly admitted at the trial that the right to examine asserted under the policy was to disinter the

body and to dissect it by an autopsy.    The defendant had no such right, and when it put its refusal to pay upon that ground it was tantamount to an admission that, if the deceased met death by drowning, it had no legal defense.    The plaintiffs were clearly right in their contention "that they were not required by law either to grant or refuse the permission asked for" by the defendant.    Indeed, they would have forfeited nothing if they had unequivocally refused the permission as officious.    When a body has once been buried, the law, having a proper respect for the dead, a just regard for the sensibilities of the living and for the due preservation of the public health, has jealously guarded the grave against ruthless intrusion. Exhumation has been tolerated only upon consent of the next of kin, for substantial reasons satisfactory to the family, and which appealed to the finest instincts of their nature, or upon permission of the proper municipal authority, in extreme cases, to answer the imperative requirements of justice or some urgent public necessity which overruled the apparent impropriety and made the act legal. Dissection is justified only where other and less objectionable means of ascertaining the cause of death fails.    Here the death was evidently by drowning; the circumstances clearly demonstrated the fact, and the coroner's jury so found.    An autopsy after burial would have looked like a handing-over of the body, as under suspicion, for mercenary ends, for experimental, not scientific or legal, purposes; would have been considered indecent, shocking to the sensibilities of the relatives, and an act "at the bare idea of which nature revolted."    King v. Lynn, 2 Term R. 733.    It was unnecessary, and nothing that appears in the case would justify it.    It would, therefore, have been sacrilege to have disturbed the dead man's grave or mutilated his remains, which by every notion of propriety should be allowed to rest in peace.

The reason assigned by the defendant for this extraordinary demand is that by one of the conditions of the policy it is provided that the insurance "shall not extend to injuries of which there is no visible mark, or cover accidental injuries, or death resulting from or caused, directly or indirectly, wholly or in part, by hernia, fits, vertigo, somnambulism, or disease in any form"; and that it was the right of the defendant to dissect the body in expectation of finding some trace of disease which under this provision might exempt it from the payment of the loss claimed.    The answer to this demand is that the policy gives no right to the autopsy claimed, and the law will not tolerate it for experimental purposes, simply to aid such a defense. No case has been called to our attention in which any such demand was sustained.    Claflin v. Insurance Co., 110 U. S. 81, 3 Sup. Ct. 507; Gross v. Insurance Co., 14 Ins. Law J. 158; Insurance Co. v. Maackens, 38 N. J. Law, 564; Weide v. Insurance Co., 1 Dill. 441, Fed. Cas. No. 17,358,—cited by the defendant,—relate to the right of an insurance company to examine the insured pursuant to a condition of the policy concerning the circumstances of the fire and the manner of arriving at the amount of loss, and contain nothing relative to the propositions involved here.    In Whitehouse v. Insurance Co., 7 Ins. Law J. 26, Fed.

Cas. No. 17,566, the policy contained a provision somewhat similar to that under consideration; the company caused an autopsy to be held before burial; and it was assumed, rather than decided, that it had that right under the policy.    It will be implied that, in a proper case, the courts, in the interests of justice, may compel the exhumation and examination of a body which is under the control of a plaintiff, if facts are established showing that there is strong reason to believe that without such examination a fraud is likely to be accomplished, and that the defendant has exhausted every other method known to the law of exposing it.    Such a right was claimed in Insurance Co. v. Brown, 57 Miss. 308, and proofs were presented in support of the demand; but the court, in denying the application, said: "It would be a proceeding repugnant to the best feelings of our nature, and likely to be in many cases so abhorrent to the sensibilities of the surviving relatives that they would prefer an abandonment of the suit to a compliance with the order."  The body of the testator, when taken from the water, exhibited visible, external signs of the cause of death.    Water came from the mouth, and the body seemed to be filled with water.    So that every condition precedent to a right of recovery, within the terms "external, violent, and accidental means," as defined in Tucker v. Insurance Co., 50 Hun, 50, 4 N. Y. Supp. 505, was established.    If immersion in water was the direct cause of death, it must be deemed the responsible one.    The possibility that at some future time the deceased might have died from some other cause cannot be a defense, for, in the nature of things, all persons must die sooner or later.    It was therefore the immediate cause that was insured against, and not a possible, hidden, secret cause, which might or might not in the future develop itself.    True, a person injured may die from some cause other than the injury. But it is difficult to say that a man who goes into water in apparent good health, and is taken out drowned, died from something other than drowning.    If he did, his life must have been shortened by accident, and this is the very thing he was insured against.    No one can purposely accelerate the death of a human being without being guilty of murder or manslaughter, according to premeditation and intent, and it would be no defense to urge that death would in any event have resulted shortly after the time when the injury was sustained.    The plaintiffs, on the record before us, ought (if the jury had found that death resulted from accidental drowning and from no other cause) to have had a verdict at the close of the case.    The refusal to send the case to the jury for such a finding, and the direction to find for the defendant, constitute error, and the exceptions thereto are fatal to the verdict.

Many of these principles as to the sanctity of the grave find support in authoritative decisions.    Meagher v. Driscoll, 99 Mass. 281; Weld v. Walker, 130 Mass. 422; Com. v. Cooley, 10 Pick. 37; Wynkoop v. Wynkoop, 42 Pa. St. 293; Pierce v. Cemetery, 10 R. I. 227; State v. Wilson, 94 N. C. 1015; State v. McClure, 4 Blackf. 328; McNamee v. People, 31 Mich. 473; Kanavan's Case, 1 Me. 226; Reg. v. Sharpe, Dears & B. Cr. Cas. 160, 7 Cox, Cr. Cas. 214; Ehlen v.

Ehlen, 18 Chi. Leg. News, 208; Secor's Case, 31 Leg. Int. 268; Johnston v. Marinus, 18 Abb. N. C. 79; King v. Lynn, 2 Term R. 733.   It is an indictable offense in many of the states to disinter a corpse, unless the deceased in his lifetime had directed such a thing, or his relatives consent to it (see New York statute in Pen. Code, §§ 305, 308, 309); and the resurrecting it for the purpose of dissection does not improve matters (Tate v. State, 6 Blackf. 111; Com. v. Loring, 8 Pick. 370; Com. v. Marshall, 11 Pick. 350; Com. v. Cooley, 10 Pick. 37).   In our own state removing dead bodies "for the purpose of selling the same," or "from mere wantonness," is punishable by fine and imprisonment.   2 Rev. St. p. 688, § 13; Laws 1819, p. 279, § 1; Pen. Code, § 311; People v. Fitzgerald, 105 N. Y. 146, 11 N. E. 378.   Relatives may sometimes remove, and enjoin others from disturbing, the dead.   Johnston v. Marinus, 18 Abb. N. C. 72, and note; 5 Am. & Eng. Enc. Law, 115; In re Beekman St. Widening, 4 Bradf. Sur. 503; Ex parte Brick Presbyterian Church, 3 Edw. Ch. 164; Fox v. Gordon, 16 Phila. 185.   This is so although the heir has no property in the body or ashes of his ancestors, and though he cannot bring a civil action against such as indecently, at least, if not impiously, violate and disturb their remains when dead and buried (2 Bl. Comm. 429); but "the person who has the freehold of the soil may bring an action of trespass against such as dig and disturb it" (Id.).   This has been clearly established in a case in Massachusetts, where a father sued because of the removal of the remains of his child, and recovered a verdict for $837 in an action of trespass quare clausum fregit.   Mr. Justice Forster, in giving judgment, remarked that a dead body is not the subject of property, and after burial it becomes part of the ground to which it has been committed; earth to earth, dust to dust, ashes to ashes.   Meagher v. Driscoll, 99 Mass. 281.   If the policy— the contract between the parties—had given the defendant, in express terms or by necessary implication, the right to demand of the representatives the exhumation of the body for the purpose of holding an autopsy upon it, as a condition precedent to recovery, the existing sentiment against the act would not have excused a refusal, and the citations as to the sanctity of the grave would be irrelevant to the question at hand, for no recovery could be had except upon proof of readiness to perform.   As the contract does not in words confer such power, the reported cases present an array of authority showing the policy of the law and public sentiment to be so strongly set against the claim that the right asserted was intrinsic, grew out of the contract, or was in any way contemplated by or incidental to it, that the representatives cannot be charged with captiously withholding a consent, when the giving of it would be repugnant to the extraordinary sensitiveness which has existed in all nations in regard to the disturbance of the human body after burial.   It follows that the plaintiffs' exceptions must be sustained, the verdict set aside, and a new trial granted, with costs to the plaintiffs to abide the event.