CHARLES WEHLE, as Executor, et al., Plaintiffs, v. THE UNITED STATES MUTUAL ACCIDENT ASSOCIATION, Defendant.

(New York Superior Court — General Term, January, 1895.)

A provision in a policy of casualty insurance that the medical adviser of the insurer shall be permitted to examine the person or body of the insured in respect to any alleged injury or cause of death when and as often as he requires on behalf of the insurer, and in case of any *post-mortem* examination by or on the part of the insured's representatives or beneficiaries the insurer shall be given opportunity to attend and participate, only gives a right to scrutinize and inspect the body while it is unburied, and does not authorize an exhumation or dissection of the body against the wish of the surviving relatives.

Misc.]        New York Superior Court, January, 1895.

The fact that the policy provides that the insurance shall not cover acci-
dental injuries or death resulting from or caused, directly or indirectly,
wholly or in part, by disease, does not give the insurer the right to dis-
sect the body in expectation of finding some trace of disease which might
exempt it under such provision from payment of the loss.

THE action was upon an accident insurance policy issued to
plaintiffs' testator, Henry Wehle, whereby the defendant
insured him in the sum of $10,000 against bodily injury
through violent and accidental means from which death should
ensue.

The plaintiffs proved, without contradiction, that the insured
met his death by accidental drowning near Far Rockaway,
September 4, 1893, and that the coroner's jury which held the
inquest upon the body returned a verdict to that effect.

The result of the trial was, by the decision of the
presiding judge, made to depend upon the seventh defense,
which alleges that the plaintiffs violated a certain provision of
the policy by refusing to give the defendant " the opportunity
to examine the body of said Henry Wehle in respect to the
alleged cause of death." On this ground the court held with
the defendant, directed a verdict in its favor, ordered that the
plaintiffs' exceptions be heard in the first instance at General
Term, and that entry of judgment be suspended in the
meantime.

The plaintiffs now apply for a new trial on the exceptions
taken, and the defendant moves for judgment on the verdict.
Code, § 1234.

*Charles Wehle* and *N. Myers*, for plaintiffs.

*Peet, Smith & Murray*, for defendant.

· McADAM, J. The condition of the policy on which the
defendant relies for a defense provides that " Any medical
adviser of the association shall be permitted to *examine* the
person or body of the insured *in respect to any alleged injury
or cause of death*, when and as often as he requires, on behalf

of the association, *and in case of any post-mortem examination by or on the part of insured's representatives or beneficiaries,* the association shall be given opportunity to attend and participate."

Neither the representatives nor the beneficiaries of the insured directed an autopsy, and hence the medical adviser of the defendant was not, by the language or intent of the condition, authorized to attend, make one, or assist in making one.

*Post-mortem* examination means an examination of a body after death, and does not necessarily imply an autopsy, which is the examination of a dead body by dissection to ascertain the cause of death.    To dissect means to cut apart or to pieces, and the scientific mode is pointed out in 2 Wharton & Stille's Medical Jurisprudence (3d ed.), section 1010, subd. 4.    The condition does not expressly authorize autopsy or dissection; nor can the power be implied, for the act would be unlawful without the assent of the deceased or his next of kin.    Penal Code, §§ 305, 308, 309.    The deceased, in his lifetime, gave no such consent, and the next of kin were under no obligation to give their assent.

The provision which gives the defendant's medical adviser the right to examine the body means scrutiny, investigation and inspection while the body is unburied.    The defendant, in its answer, admits that it received immediate notice of the death, and if it failed to avail itself of the privilege of examination before burial the right was waived.    The deceased met his death September 4, 1893, was embalmed, and buried September ninth, so that the defendant had five days within which to assert and exercise its right to examine the body, if it had chosen to avail itself of the opportunity.

The provision cannot be extended to mean that the defendant, after burial, had the right to exhume and dissect the body " when and as often as he " (the medical adviser) " requires." Even if the language of the condition could by any logical reasoning furnish argument for the existence of the right stated, it would be strictly construed against the person mak-

ing such an unusual and unnatural claim. *Kratzenstein* v. *Ins. Co.*, 116 N. Y. 54; *Foot* v. *Ins. Co.*, 61 id. 571; *Hoffman* v. *Ins. Co.*, 32 id. 405. It is settled law that a provision entailing a forfeiture or limiting liability must receive a strict construction; it cannot be extended by interpretation so as to include a case not clearly within the words. *Griffey* v. *Ins. Co.*, 100 N. Y. 417; *Rönn* v. *Ins. Co.*, 59 id. 387. Moreover, the condition upon which the defense is based was to operate upon the contract of insurance only subsequent to the fact of a loss. It must, therefore, receive a liberal and reasonable construction in favor of the beneficiaries under the contract. *McNally* v. *Ins. Co.*, 137 N. Y. 389; *Trippe* v. *Provident Fund Society*, 140 id. 26.

The condition of the policy requiring immediate notice of death and the provision for examination of the body are to be construed together, the former being in aid of the latter, and to enable the defendant to exercise whatever liberties it confers.

The defendant's counsel frankly admitted at the trial that the right to examine asserted under the policy was to disinter the body and to dissect it by an autopsy. The defendant had no such right, and when it put its refusal to pay upon that ground it was tantamount to an admission that if the deceased met death by drowning it had no legal defense. The plaintiffs were clearly right in their contention "that they were not required by law either to grant or refuse the permission asked for" by the defendant. Indeed, they would have forfeited nothing if they had unequivocally refused the permission as officious.

When a body has once been buried, the law, having a proper respect for the dead, a just regard for the sensibilities of the living and for the due preservation of the public health, has jealously guarded the grave against ruthless intrusion. Exhumation has been tolerated only upon consent of the next of kin, for substantial reasons satisfactory to the family, and which appealed to the finest instincts of their nature, or upon permission of the proper municipal authority, in extreme

cases, to answer the imperative requirements of justice, or some urgent public necessity which overruled the apparent impropriety and made the act legal. Dissection is justified only where other and less objectionable means of ascertaining the cause of death fail. Here the death was evidently by drowning; the circumstances clearly demonstrated the fact, and the coroner's jury so found. An autopsy after burial would have looked like a handing over of the body, as under suspicion, for mercenary ends, for experimental, not scientific or legal purposes; would have been considered indecent, shocking to the sensibilities of the relatives, and an act " at the bare idea of which nature revolted." *King* v. *Lynn*, 2 T. R. 733. It was unnecessary, and nothing that appears in the case would justify it. It would, therefore, have been sacrilege to have disturbed the dead man's grave or mutilated his remains, which, by every notion of propriety, should be allowed to rest in peace.

The reason assigned by the defendant for this extraordinary demand is that by one of the conditions of the policy it is provided that the insurance "shall not extend to injuries of which there is no visible mark, or cover accidental injuries, or death resulting from or caused, directly or indirectly, wholly or in part, by hernia, fits, vertigo, somnabulism, or disease in any form," and that it was the right of the defendant to dissect the body in expectation of finding some trace of disease which under this provision might exempt it from the payment of the loss claimed. The answer to this demand is, that the policy gives no right to the autopsy claimed, and the law will not tolerate it for experimental purposes simply to aid such a defense. No case has been called to our attention in which any such demand was sustained.

*Claflin* v. *Ins. Co.*, 110 U. S. 81; *Gross* v. *Ins. Co.*, 14 Ins. L. J. 158; *State Ins. Co.* v. *Maackens*, 9 Vroom, 564; *Weide* v. *Ins. Co.*, 1 Dill. 441, cited by the defendant, relate to the right of an insurance company to examine the insured, pursuant to a condition of the policy, concerning the circumstances of the fire and the manner of arriving at the amount of

loss,.and contain nothing relative to the propositions involved here.   In *Whitehouse* v. *Ins. Co.*, 7 Ins. L. J. 26, the policy contained a provision somewhat similar to that under consideration ; the company caused an autopsy to be held *before . burial*, and it was assumed rather than decided that it had that right under the policy.

It will be implied that in a proper case the courts, in the interests of justice, may compel the exhumation and examination of a body which is under the control of a plaintiff, if facts are established showing that there is strong reason to believe that without such examination a fraud is likely to be accomplished, and that the defendant has exhausted every other method known to the law of exposing it.   Such a right was claimed in *Granger's Ins. Co.* v. *Brown*, 57 Miss. 308, and proofs were presented in support of the demand; but the court in denying the application said : " It would be a proceeding repugnant to the best feelings of our nature, and likely to be in many cases so abhorrent to the sensibilities of the surviving relatives that they would prefer an abandonment of the suit to a compliance with the order."

The body of the testator when taken from the water exhibited visible, external signs of the cause of death.   Water came from the mouth, and the body seemed to be filled with water.   So that every condition precedent to a right of recovery within the terms " external, violent and accidental means," as defined in *Tucker* v. *Ins. Co.*, 50 Hun, 50, was established.

If immersion in water was the direct cause of death it must be deemed the responsible one.   The possibility that at some future time the deceased might have died from some other cause cannot be a defense, for in the nature of things all persons must die sooner or later.   It was, therefore, the immediate cause that was insured against, and not a possible, hidden, secret cause which might or might not in the future develop itself.   True, a person injured may die from some cause other than the injury.   But it is difficult to say that a man who goes into water in apparent good health and is taken

out drowned died from something other than drowning; if he did, his life must have been shortened by accident, and this is the very thing he was insured against. No one can purposely accelerate the death of a human being without being guilty of murder or manslaughter, according to premeditation and intent, and it would be no defense to urge that death would in any event have resulted shortly after the time when the injury was sustained.

The plaintiffs on the record before us ought (if the jury had found that death resulted from accidental drowning and from no other cause) to have had a verdict at the close of the case; the refusal to send the case to the jury for such a finding and the direction to find for the defendant constitute error, and the exceptions thereto are fatal to the verdict.

Many of these principles as to the sanctity of the grave find support in authoritative decisions. *Meagher* v. *Driscoll*, 99 Mass. 281; *Weld* v. *Walker*, 130 id. 422; *Commonwealth* v. *Cooley*, 10 Pick. 37; *Wynkoop* v. *Wynkoop*, 42 Penn. St. 293; *Pierce* v. *Cemetery*, 10 R. I. 227; 14 Am. Rep. 667; *State* v. *Wilson*, 94 N. C. 1015; *State* v. *McClure*, 4 Blackf. 328; *McNamee* v. *People*, 31 Mich. 473; *Kanavan's Case*, 1 Maine, 226; *Reg.* v. *Sharpe*, D. & B. 160; 7 Cox Crim. Cas. 214; *Ehlen* v. *Ehlen*, 18 Chicago L. N. 208; *Secor's Case*, 31 Leg. Inst. 268; 18 Abb. N. C. 79; *King* v. *Lynn*, 2 T. R. 733.

It is an indictable offense in many of the states to disinter a corpse, unless the deceased in his lifetime had directed such a thing, or his relatives consent to it (see N. Y. Statute in Penal Code, §§ 305, 308, 309); and the resurrecting it for the purpose of dissection does not improve matters. *Tate* v. *State*, 6 Blackf. 111; *Commonwealth* v. *Loring*, 8 Pick. 370; *Commonwealth* v. *Marshall*, 11 id. 350; *Commonwealth* v. *Cooley*, 10 id. 37. In our own state removing dead bodies " for the purpose of selling the same " or " from mere wantonness " is punishable by fine and imprisonment. 2 R. S. 688, § 13; Laws 1819, p. 279, § 1; Penal Code, § 311; *People* v. *Fitzgerald*, 105 N. Y. 146. Relatives may sometimes remove, and enjoin others

from disturbing, the dead. *Johnston* v. *Marinus*, 18 Abb.
N. C. 72, and note; 5 Am. & Eng. Ency. of Law, 115; *In
re Beekman St. Widening*, 4 Bradf. 503; *In re Brick
Church*, 3 Edw. Ch. 164; *Fox* v. *Gordon*, 16 Phila. 185.
This is so although the heir has no property in the body or
ashes of his ancestors, and though he cannot bring a civil
action against such as indecently, at least, if not impiously,
violate and disturb their remains when dead and buried (2
Black. Com. 429); but "the person who has the freehold of
the soil may bring an action of trespass against such as dig
and disturb it." Id. This has been clearly established in a
case in Massachusetts, where a father sued because of the
removal of the remains of his child, and recovered a verdict
for $837 in an action of trespass *quare clausum fregit*. Mr.
Justice FORSTER, in giving judgment, remarked that a dead
body is not the subject of property, and after burial it becomes
part of the ground to which it has been committed, earth to
earth, dust to dust, ashes to ashes. *Meagher* v. *Driscoll*, 99
Mass. 281.

If the policy, the contract between the parties, had given
the defendant, in express terms or by necessary implication,
the right to demand of the representatives the exhumation of
the body for the purpose of holding an autopsy upon it as a
condition precedent to recovery, the existing sentiment against
the act would not have excused a refusal, and the citations as
to the sanctity of the grave would be irrelevant to the ques-
tion at hand, for no recovery could be had except upon proof
of readiness to perform. As the contract does not in words
confer such power, the reported cases present an array of
authority showing the policy of the law and public sentiment
to be so strongly set against the claim that the right asserted
was intrinsic, grew out of the contract or was in any way con-
templated by or incidental to it, that the representatives can-
not be charged with captiously withholding a consent when
the giving of it would be repugnant to the extraordinary sen-
sitiveness which has existed in all nations in regard to the dis-
turbance of the human body after burial.

It follows that the plaintiffs' exceptions must be sustained, the verdict set aside and a new trial granted, with costs to the plaintiffs to abide the event.

GILDERSLEEVE, J., concurs.

Exceptions sustained, verdict set aside and new trial granted, with costs to plaintiffs to abide event.