■ COLISEUM TOWERS ASSOCIATES, Respondent, v COUNTY OF NASSAU et al., Appellants, et al., Defendant. [769 NYS2d 293]—

In an action, inter alia, for a judgment declaring that the plaintiff Coliseum Towers Associates is not obligated to pay real property taxes assessed against the land portion of certain premises it leased from the defendant County of Nassau, the defendants County of Nassau, Board of Supervisors of the County of Nassau, Board of Assessors of the County of Nassau, and the County Treasurer of the County of Nassau appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Nassau County (Rossetti, J.), entered May 28, 2002, as, upon a decision of the same court dated March 29, 2002, after a nonjury trial, declared that they were not entitled to bill or collect from the plaintiff land taxes paid after April 30, 1987, or to bill or collect from the plaintiff land taxes from the date of the judgment to the end of the lease, and enjoined them from billing and collecting from the plaintiff land taxes with respect to the subject premises or declaring the plaintiff in default of its obligations under the lease for not paying such taxes, and is in favor of the plaintiff and against them in the principal sum of $26,412,009.34.

Ordered that the judgment is reversed insofar as appealed from, on the law and the facts, with costs, and it is declared that the defendants County of Nassau, Board of Supervisors of the County of Nassau, Board of Assessors of the County of Nassau, and the County Treasurer of the County of Nassau are entitled to bill and collect from the plaintiff land taxes paid after April 28, 1981, and until the end of the lease.

In April 1981 the defendant County of Nassau executed a 99-year lease of land with the predecessor in interest of the plaintiff, Coliseum Towers Associates (hereinafter CTA). The lease required CTA to develop a portion of County-owned property known as Mitchel Field for commercial use. Pursuant to its obligations under the lease, CTA constructed a large-scale office building complex known as EAB Plaza on the subject land. Between 1984 and the commencement of this action in 1991, CTA paid real property taxes assessed against both the land and building portions of the subject premises, without protest. In this litigation, CTA asserts that the subject lease only obligated it to pay real property taxes assessed against the building.

The lease and similar County leases have been the subjects of

prior litigation before this Court (*see Atria Assoc. v County of Nassau,* 181 AD2d 847 [1992]). In the *Atria* case, where several of the plaintiffs therein, not including CTA, argued that their respective leases only obligated them to pay building taxes, we found that the operative tax language was "so confusing that it renders impossible any determination of the intention of the parties," and that " 'the intent must be determined by . . . evidence [and] inferences outside the written words of the instrument' " (*Atria Assoc. v County of Nassau, supra* at 851, quoting *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291 [1973]).

A nonjury trial was held in the instant matter, wherein extrinsic evidence of the parties' conduct before and after execution of the lease was elicited. The trial court ruled in favor of CTA, finding, inter alia, that evidence of the parties' preexecution negotiations established the parties' intent that CTA was obligated only to pay taxes assessed against the building.

On an appeal from a judgment rendered after a nonjury trial, this Court's review is not limited to whether the trial court's decision was against the weight of the evidence (*see We're Assoc. Co. v Rodin Sportswear,* 288 AD2d 465 [2001]; *Ancewicz v Western Suffolk BOCES,* 282 AD2d 632 [2001]). Rather, this Court may review the record as a whole and grant the judgment warranted (*see We're Assoc. Co. v Rodin Sportswear, supra; Ancewicz v Western Suffolk BOCES, supra*).

Contrary to the trial court's determination, the evidence of the parties' practical interpretation of the subject lease established that CTA was obligated to pay real property taxes assessed against both the land and building portions of the subject premises. Although the events leading up to the execution of the lease were admissible as extrinsic evidence of the parties' intent to resolve the ambiguities therein (*see 67 Wall St. Co. v Franklin Natl. Bank,* 37 NY2d 245, 248-249 [1975]), "the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence" (*Old Colony Trust Co. v Omaha,* 230 US 100, 118 [1913]; *see also Federal Ins. Co. v Americas Ins. Co.,* 258 AD2d 39, 44 [1999]).

The evidence of the payment by CTA of land taxes without protest for seven years is probative of the parties' intent that CTA was obligated to pay land taxes (*see Kalmon Dolgin Co. v Walnut Lanes,* 27 AD2d 843 [1967]). Moreover, the failure of CTA to challenge taxes assessed against the land under the subject lease in *Atria Assoc. v County of Nassau (supra),* its tax

certiorari litigation challenging the assessed value of the land and building, testimony by CTA's tax attorney that the lease obligated CTA to pay taxes on the land and the building, and the testimony from the former Nassau County Deputy County Executive in charge of Mitchel Field development that it was County policy that CTA pay land taxes, was further evidence of the parties' intent that CTA was obligated to pay such taxes. In contrast, the evidence elicited by CTA consisted largely of its representatives' self-serving testimony, which was contradicted by other evidence.

Further, the probative value of the evidence elicited by CTA was further diminished by reason of the trial court's erroneous application of the "contra proferentem" doctrine, its reliance on the lease language itself in direct contravention to our holding in *Atria Assoc. v County of Nassau (supra)*, and the negative inferences it drew from the failure of the County to call certain witnesses.

"It has long been the rule that ambiguities in a contractual instrument will be resolved *contra proferentem*, against the party who prepared or presented it" (*151 W. Assoc. v Printsiples Fabric Corp.*, 61 NY2d 732, 734 [1984]). However, that rule applies "against the party who prepared it, and favorably to a party who had no voice in the selection of its language" (*Jacobson v Sassower*, 66 NY2d 991, 993 [1985]). The contra proferentem doctrine was inapplicable to the subject lease since the record demonstrates that CTA participated in negotiating its terms.

"A trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify in a civil proceeding" (*Matter of Nassau County Dept. of Social Servs. [Dante M.] v Denise J.*, 87 NY2d 73, 79 [1995]). However, the trial court erred in drawing a negative inference against the County with respect to certain witnesses it failed to present at trial, since the witnesses were former County employees and thus, not under the County's direction or control (*see Zeeck v Melina Taxi Co.*, 177 AD2d 692, 694 [1991]; *Hershkowitz v Saint Michel*, 143 AD2d 809 [1988]).

In light of our determination, we need not address the County's remaining contentions. Florio, J.P., Friedmann, Townes and Cozier, JJ., concur.