EMILIO M. GARZA, Circuit Judge,
dissenting:
Jefferson Block 24 Oil & Gas, L.L.C. (“Jefferson Block”) contends that an Oil Pollution Act (“OPA”) insurance policy insures it against the costs of a recent spill from a particular 16-inch right-of-way oil pipeline. The policy’s underwriters (“Underwriters”) contend that the policy does not. The district court granted summary judgment to the Underwriters, concluding that the policy did not reach spills from the pipeline. The majority reverses, relying on the rule of contra proferentem, to construe ambiguity in the policy against the Underwriters. The substantial weight of recent New York authority, however, suggests that contra proferentem should not apply in this case. I therefore dissent.
The OPA requires a responsible party to “establish and maintain, in accordance with regulations promulgated by the Secretary, evidence of financial responsibility sufficient to meet the maximum amount of liability to which the responsible party could be subjected....” 33 U.S.C. § 2716. The implementing regulations require a responsible party to submit, to the Minerals Management Service (“MMS”), certain forms including, in some cases, a form designated MMS-1021. 30 C.F.R. § 253.40(a)(3). The purpose of the MMS-1021 form is to identify a filer’s covered offshore facilities (“COFs”). Id. In this ease, however, MMS-1021 has been put to another, perhaps problematic purpose: defining the scope of Jefferson Block’s coverage under its insurance policy. As the majority explains, relying on the MMS-1021 form to define the scope of the policy lends itself to some ambiguity with regard to whether the pipeline in this case is covered by the policy.
We must resolve that ambiguity under the laws of the State of New York. “[T]o determine state law, federal courts look to final decisions of the highest court of the state.” Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir.1992). “In the absence of a final decision by the state’s highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case.” Am. Int’l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir.2003) (citing Transcon. Gas Pipe Line, 953 F.2d at 988). “[A]n intermediate state appellate court decision is not controlling per se,” but may serve as “a *601 guide to assist the federal court in its goal of determining how the state’s highest court would decide the issue.” Richards v. La. Citizens Prop. Ins. Corp., 623 F.3d 241, 244 (5th Cir.2010).
The majority concludes that New York law requires us to resolve this case in Jefferson Block’s favor pursuant to the traditional rule of contra proferentem. Contra proferentem provides that “in cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it and favorably to a party who had no voice in the selection of its language.” 67 Wall St. Co. v. Franklin Nat’l Bank, 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 333 N.E.2d 184 (1975). In the context of insurance disputes, contra proferentem has taken the form of the so-called “contra-insurer” rule, which provides that “[w]hen an ambiguity is found [in a policy], it must be construed against the insurer and in favor of coverage.” Nationwide Mut. Ins. Co. v. CNA Ins. Co., 286 A.D.2d 485, 487, 729 N.Y.S.2d 760, 762-63 (2d Dep’t 2001). Early New York cases cast the rule in uncompromising terms, requiring that “[w]here an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty thereby created.” Kratzenstein v. W. Assur. Co. of Toronto, 116 N.Y. 54, 59, 22 N.E. 221 (1889) (citation omitted). New York courts, however, have long since moved away from the “earlier and more rigid” versions, adopting instead a more nuanced approach that recognizes that contra proferentem will not always provide the appropriate rule of decision. U.S. Fire Ins. Co. v. Gen. Reinsurance Corp., 949 F.2d 569, 573 (2d Cir.1991).
A review of the case law reveals numerous opinions suggesting that contra proferentem will not apply where the party seeking the benefit of the doctrine was sophisticated and negotiated the legal instrument at issue. See, e.g., Sci. Applications Int’l Corp. v. State, 60 A.D.3d 1257, 1259, 876 N.Y.S.2d 182, 184 (3d Dep’t 2009) (declining to construe contract against the drafter because both parties “are sophisticated parties and there is evidence that they engaged in negotiations as they worked out some of the details of the contract”); Coliseum Towers Assocs. v. Cnty. of Nassau, 2 A.D.3d 562, 565, 769 N.Y.S.2d 293, 297 (2d Dep’t 2003) (“The contra proferentem doctrine was inapplicable to the subject lease since the record demonstrates that [the plaintiff] participated in negotiating its terms.”); Citibank, N.A. v. 666 Fifth Ave. Ltd. P’ship, 2 A.D.3d 331, 331, 769 N.Y.S.2d 268, 269 (1st Dep’t 2003) (“The ambiguities are not, however, to be construed against defendant by reason of its having drafted the initial version of the leases, since the lease agreements ultimately entered into resulted from extensive negotiations in which both parties, each a commercially sophisticated entity, were represented by counsel, and plaintiff failed to show that it ‘had no voice in the selection of [the leases’] language.’” (citation omitted)); Am. Prop. Consultants, Ltd. v. Zamias Servs., Inc., 294 A.D.2d 217, 217, 741 N.Y.S.2d 852, 853 (1st Dep’t 2002) (“Defendants’ request for a contra proferentem charge was properly denied since, although plaintiff prepared the first draft of the subject fee agreement, defendants negotiated significant changes to it and had counsel available to review the agreement for them.”); MPEG LA, LLC v. Audiovox Elecs. Corp., 2011 N.Y. Slip Op. 21260, 2011 WL 3169208, at *15, — Misc.3d-,-, — N.Y.S.2d -, - (Sup.Ct., Suffolk Cnty., 2011) (remarking that contra proferentem prob *602 ably does not apply to sophisticated parties); Oceana Holding Corp. v. Atl. Oceana Co., Inc., 4 Misc.3d 1029(A), 2004 N.Y. Slip Op. 51122(11), 2004 WL 2246177, at *5 (Civ.Ct., Kings Cnty., 2004) (stating that the “ ‘contra proferentem doctrine’ ... is inapplicable when both parties participated in negotiating the terms”); accord In re September 11th Liab. Ins. Coverage Cases, 458 F.Supp.2d 104, 118 n. 11 (S.D.N.Y.2006) (stating that construing a policy against the insurer “is ‘generally inappropriate if both parties are sophisticated.’” (quoting DaPuzzo v. Globalvest Mgt. Co., 263 F.Supp.2d 714, 719 (S.D.N.Y.2003))).[1]
The majority, however, disregards these cases and concludes that contra proferentem must apply because Jefferson Block did not “draft[ ] or dictat[e]” the terms of the insurance policy. But neither New York case law nor the purposes of contra proferentem justify defining the rule’s exceptions so narrowly. Contra proferentem is designed to protect a party that “had ‘no voice in the selection of [the contractual] language.’ ” Sci. Applications, 60 A.D.3d at 1259, 876 N.Y.S.2d at 184 (quoting 67 Wall St. Co., 37 N.Y.2d at 249, 371 N.Y.S.2d 915, 333 N.E.2d 184). A party need not be the sole drafter or dictator of a contract’s terms in order to have a “voice in the selection” of the contract’s language. Moreover, “the touchstone for applying contra proferentem is the insured’s lack of sophistication,” particularly where the parties do not have “equivalent bargaining power.” U.S. Fire Ins. Co., 949 F.2d at 574. A sophisticated party with a means to influence the terms of the contract should be able to identify and, if necessary, remedy ambiguities at the time of drafting. Such a party does not need a thumb on the scales in its favor.
It is clear that Jefferson Block, a commercial enterprise engaged in an expensive, large-scale, and highly technical industry, is a sophisticated party. It was also the party in the best position to know the details of the facilities it operated. There is no reason, then, to think that Jefferson Block lacked the sophistication necessary to see the ambiguity at issue here. We should turn, then, to whether Jefferson Block had a voice in the creation of the ambiguous terms of the policy. It is true that, as the majority stresses, the drafter of the policy chose to rely on the MMS-1021 form. But Jefferson Block filled that form out and, moreover, filled it out incorrectly. The ambiguity here arises entirely out of Jefferson Block’s answers to the form, not the decision to incorporate the form itself. As the majority concedes, a procedure exists for including a non-COF facility on an MMS-1021. Jefferson Block simply failed to comply with that procedure. Therefore, regardless of the extent to which Jefferson Block negotiated the terms of the policy as a whole, it certainly had ample power to affect the ambiguity at issue here. In light of the substantial body of law cautioning against reliance of contra proferentem in such a situation, I cannot concur with the majority’s decision to do so here.
*603 What we are left with, then, is an ambiguous contract that we must construe using the ordinary tools of contractual interpretation. By my reading, the Underwriters’ interpretation seems to most closely fit the language at issue and the extrinsic evidence relied upon by the district court. The MMS-1021 is, by its own terms, a list of locations of COFs. The purpose of the MMS-1021 is to identify COFs. The most natural reading of the policy is that it is intended to reach COFs and/or any non-COF facilities that are properly identified on the form in the manner directed for non-COF facilities. I therefore respectfully DISSENT.

. Our sister circuit once observed that "[i]t is unsettled in New York whether contra proferentem applies if the policyholder is a sophisticated entity that negotiated contract terms.” Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 279 (2d Cir.2000). It is not entirely clear that the Second Circuit still views this question as undecided. Two years after it declared the law unclear in Morgan Stanley, the court seemed to revise that estimate, suggesting that it is "generally inappropriate" to apply contra proferentem to contracts between sophisticated parties. Int’l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 88 n. 7 (2d Cir.2002) (citing U.S. Fire Ins. Co., 949 F.2d at 573). In any event, our duty is not to answer this question as the Second Circuit would answer it, but as New York's highest court would.